PRYOR *v.* FOSTER.

*(Superior Court of Buffalo, General Term. July 13, 1888.)*

1. LANDLORD AND TENANT—FALSE REPRESENTATIONS—RESCISSION BY TENANT.
    Where a lessor, at the time of making the lease, makes false representations as to the heating power of a furnace in the leased premises, but the lessee nevertheless retains possession and pays rent, he waives his right to rescind the lease, but not his claim for damages for the deceit.

2. SAME—FALSE REPRESENTATIONS BY LANDLORD—ACTION FOR—EVIDENCE.
    In an action for damages for such deceit, it is competent to receive parol proof of the statements of defendant made with respect to the capacity of the furnace.

Appeal from municipal court.

Action by John L. Pryor to recover damages for false representations made by defendant, Hubbard A. Foster, in regard to the heating capacity of a furnace in a building which defendant was leasing to plaintiff. Judgment for defendant, and plaintiff appeals.

*Tracy C. Becker*, for appellant. *E. J. Plumley*, for respondent.

HATCH, J. The proof upon the part of the plaintiff tended to show, and would have warranted the judge in finding, that defendant made false statements with respect to the heating capacity of the furnace, and that the plaintiff, relying thereon, was induced to rent said house, and execute the lease referred to in the complaint. *Whitney* v. *Allaire*, 1 N. Y. 308, 309; *Smith* v. *Countryman*, 30 N. Y. 670–675; *Krumm* v. *Beach*, 96 N. Y. 398. The court below did not pass upon the sufficiency of the evidence as entitling the plaintiff to recover, but nonsuited, upon the ground that the plaintiff, having en-

tered into possession of the premises, has chosen to affirm the contract, availing himself of the benefits, and has therefore waived any claims for damages which he might have had. The lease of the premises was executed by the parties on the 27th day of January, 1887, for the term of fifteen months and five days, and the defendant entered into possession, but did not move into the house with his family until about February 20, 1887, from which time he has continued to occupy and pay the rent according to the provisions of the lease. This action was commenced on the 13th day of October, 1887.

In *Whitney* v. *Allaire*, 1 N. Y. 305, the plaintiff brought his action to recover damages for deceit in the leasing of a wharf. After the contract was executed, and previous to plaintiff's entering into possession, he discovered that defendant had no rights in 150 feet of the wharf. He thereupon leased of the corporation owner such portion, and, without offering to rescind the contract, entered into possession and occupancy of the whole, and so continued until the expiration of the term. In an action brought to recover the rent reserved in the lease, it was held that the defendant was entitled to a deduction, by reason of the fraud, to the extent that he was obliged to pay for the corporation lease; that, by entering into possession of the premises and remaining, he waived his right to rescind the contract, but not his right to recover damages for the fraud. Id. 311, 312. This decision has been followed by a long line of authorities, in which is asserted the doctrine that, where fraud is perpetrated in procuring the execution of a contract, the person against whom the fraud is committed has an election of remedies. He may rescind the contract, and bring his action to recover back what he has parted with, or he may affirm the contract, securing to himself all the benefits to be derived therefrom, and bring his action for whatever damage he has sustained by reason of the fraud. *Miller* v. *Barber*, 66 N. Y. 558, 672, 673; *Strong* v. *Strong*, 102 N. Y. 69, 5 N. E. Rep. 799. In *Krumm* v. *Beach*, 96 N. Y. 398, Judge FINCH disposes of a similiar question to the present, in the following language: "The contention of the appellants is that the defrauded vendee had but one remedy, and that consisted of a rescission of the contract, and a recovery back of the consideration paid, after an offer to convey and a tender of what had been received. Doubtless, this remedy existed; but the vendee was not compelled to adopt it. He had a right, instead of rescinding the contract, to stand upon it, and require of the vendor its complete performance, or such damages as would be equivalent of that complete performance. The vendee, acting honestly on his part, was entitled to the full fruit of his bargain, and could not be deprived of it, without his consent, by the fraud of the vendor." Applying this rule here, the plaintiff had the right, under his executed agreement, to enter into the possession of the house and premises. He did not then know that the furnace would not heat the house, and he relied on the defendant's statements in that respect. When he discovered that these statements were untrue, he was not bound to remove from the house, and put himself and family to a great inconvenience in order to obtain redress from the fraud practiced which placed him in that position, but he had the right to remain, enjoying the fruits of his bargain so far as he was able, and call upon the defendant to make good what he had suffered. His payment of rent was not a waiver of his rights. This he was bound to do under the lease which he affirmed by remaining; but what he could do he has done,—affirmed the contract, and brought his action to recover damages for the fraud. This election upon the part of the plaintiff did not change the position of the defendant in any respect. The agreement between the parties had been executed. The rights of each became fixed. What the plaintiff had contracted for was a house, with a furnace of sufficient capacity to properly and comfortably warm it. The latter he did not get. His damage was then determined, and his remaining did not increase or diminish it. His measure of damage was the difference in the rental value between the premises as he received them and such as he would have

received had they been as represented. The damages could be measured,—ascertained on the first day of the term or the last day with equal precision and without change. This is not a case where the damages are dependent, in a degree, upon the failure of a person to act where action is required to prevent injury. Where such is the case, justice requires him to act, as his failure so to do would of itself be a breach of duty. A different rule might allow a person to profit by his own wrong. Such is a case of a fire started through negligence, when the person whose property is fired could put it out with little effort, but knowingly omits to do so, (*Hogle* v. *Railroad Co.*, 28 Hun, 363;) or where cattle are trespassing upon another's land, and he knowingly allows them to remain and do damage, when by acting he could prevent it, ( *Woodmansee* v. *Kinnicutt*, 20 Wkly. Dig. 512.) These cases and others are founded upon the theory that the injured person owes a duty to make the damage as light as possible. They are all without application here, for the reason that plaintiff's acting or failure to act did not change the measure of damage, which became fixed when the contract was made.

We should deem this discussion sufficient to dispose of this case, but counsel for defendant strenuously insists that the case of *People* v. *Stephens*, 71 N. Y. 527, is conclusive in favor of defendant upon the doctrine of waiver. That case arose out of an executory contract entered into by the state and the defendant for the performance of work upon the Erie canal. The defendant and others, previous to the execution of the contract, which was awarded to the lowest bidder, entered into a fraudulent conspiracy to prevent competition in bidding, and procure the contract at a higher sum than the work was worth. Defendant procured a contract, and entered upon its performance. Subsequently the state discovered the fraud, and some time after the legislature passed an act directing the attorney general to bring actions to set aside contracts made in pursuance of such bids, and to recover back the moneys paid thereunder in excess of the fair value of the work and materials, in case it should be established that the contracts were procured by fraud. Under that act this action was brought. The defendant in the mean time continued to perform work upon the contract, and receive pay according to its terms, and was also, by a joint resolution of the legislature, adopted subsequent to the passage of the act, and after the commencement of the action, called upon to perform said contract. Two years after the passage of the act another act was passed, conferring power upon the canal board, upon recommendation of the canal commissioner, when they should deem it for the best interests of the state, by resolution to cancel and annul any contract, and to any contractor whose contract should be annulled should be paid the money deposited as security for the performance of the contract, and also the money earned thereunder, at the date of annulment, together with compensation for implements, tools, etc. Defendant's contract was never annulled, and he continued to perform it, and received pay according to its terms. The court held that the fraud committed at the inception of the contract was waived by the state, and that the money paid thereunder could not be recovered back, nor could damages be recovered for the fraud; that the evident intent of the legislature was to waive the fraud, as evidenced by their several acts. But there was here no tendency to depart from the well-established rule heretofore stated. 'On the contrary, it was reaffirmed and adopted. Judge ALLEN found no difficulty in upholding the rule, and also agreeing with the opinion of Judge RAPALLO, based upon the doctrine of waiver. Id. 554–558. All that was pretended to be there decided was that, under an executory contract for the purchase of property thereafter to be delivered and paid for in the future, and the person discovers the fraud, yet if, with full knowledge of the fraud, he accepts and pays for the property, such act is a waiver of the fraud, and leaves him without remedy. This doctrine was applied in that case for a perfectly logical reason, and is supported by a long line of authorities. Page 557. But courts

are not inclined to extend its application beyond present limits. *Brigg* v. *Hilton,* 99 N. Y. 517–529, 3 N. E. Rep. 51. But a very different case is here presented. This is not an executory contract, but an executed one, (2 Kent, Comm. 12th Ed. 450;) and the reasoning in the case of *Whitney* v. *Allaire* precisely fits it. The same doctrine is reiterated and upheld in the *Stephens Case* where the *Whitney Case* is cited with approval; so that, instead of being an authority in support of defendant's claims, it is in harmony with the cases first cited. It was also competent to receive parol proof of the statements of the defendant made with respect to the capacity of the furnace. *Chapin* v. *Dobson,* 78 N. Y. 74; *Juilliard* v. *Chaffee,* 92 N. Y. 529. It follows that the judgment must be reversed, with costs.

All concur.