MARCUS P. MASON, Respondent, *v.* AMASA CORBIN, JR., Appellant.

*False representations — remedy of the party defrauded — findings of a referee as to fraud — impeaching a witness — when a complaint will be deemed sufficient on appeal.*

A party defrauded on discovering the fraud may rescind the contract, returning whatever he has received thereunder and recover the purchase price paid, or he may retain the property he has received and sue to recover his damages.

An action may be maintained to recover damages resulting from the alleged fraud of the defendant in falsely representing the condition of a corporation at the time of the sale by him to the plaintiff of its stock, notwithstanding the fact that soon after the plaintiff's purchase of the stock he was informed of the true condition of the corporation and retained his stock and afterwards became an officer thereof.

In an action brought to recover damages resulting from such fraudulent representations, if the referee, to whom the action is referred, finds that the defendant made the alleged representations about the condition of the company, knowing them to be false and for the purpose of inducing the plaintiff to purchase the stock in question, he finds as a fact that the defendant in such transaction acted fraudulently and with the intent to defraud the plaintiff.

The plaintiff in an action cannot be allowed to prove by his own witness conversations had between the plaintiff and such witness, not in the presence of the defendant, and to impeach the statements of his own witness as to such conversations by proving contradictory statements made by the witness out of court.

Where no objection to a complaint was presented either by motion or demurrer, or upon the trial, it will be deemed sufficient on appeal.

APPEAL by the defendant, Amasa Corbin, Jr., from a judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of the county of St. Lawrence on the 19th day of June, 1893, upon the report of a referee.

*E. H. Neary*, for the appellant.

*A. E. Kilby*, for the respondent.

PUTNAM, J.:

The action was brought to recover damages for the alleged fraud of the defendant on the sale of stock of the St. Lawrence Manufacturing Company to the plaintiff in falsely representing the condition of said company.

The learned counsel for appellant urges that plaintiff cannot maintain the action ; that he is estopped by his conduct since January, 1889 ; that soon after his subscription for the stock, in December, 1888, he was informed of the true condition of the company, and that retaining his stock and afterwards becoming an officer of the company, and acting as such, he cannot now maintain the action.

The referee, however, found as a fact that plaintiff did not learn the real condition of the company until the month of May, 1890. Were it otherwise, however, the action was brought to recover damages. The plaintiff did not claim to rescind. It is well settled that a party defrauded, on discovering the fraud, may rescind, returning whatever he has received, and recover the purchase price paid, or he may retain the property he has received and sue to recover his damages. Such an action the plaintiff has brought. We see no reason why he should not recover if the facts are as claimed by him. (*Miller* v. *Barber*, 66 N. Y. 558 ; *Krumm* v. *Beach et al.*, 96 id. 398 ; *Strong* v. *Strong*, 102 id. 69 ; *Pryor* v. *Foster*, 17 N. Y. St. Repr. 472.)

It is suggested by the appellant that the complaint does not allege, nor does the referee find, that on the sale of the stock in question the defendant acted fraudulently or made the alleged representations with intent to defraud or deceive.

The complaint, no objection to it having been raised by motion, demurrer or upon the trial, should be deemed sufficient on appeal. On examining the referee's report and findings we think he *does* find as a fact that the defendant in the transaction which is the subject of

the action acted fraudulently and with intent to defraud the plaintiff. The referee finds that the defendant made the alleged representations about the condition of the company knowing them to be false, and with intent to and for the purpose of inducing the plaintiff to purchase the stock in question.

The appellant further urges that the referee's findings were not supported by the evidence. We will not undertake to discuss the evidence in the case. After a careful consideration of it we are of opinion that it was such that this court could not properly reverse the judgment directed by the learned and experienced referee *on the facts.*

Nor do we think it necessary to discuss the many exceptions made by the appellant on the trial, which are referred to in his brief, and which it is now claimed should cause a reversal of the judgment entered in the action.

After a careful reading of the case and consideration of the briefs presented by the parties we should be in favor of an affirmance of the judgment, were it not for what was doubtless an inadvertent error of the learned referee in overruling the objections of defendant to improper evidence offered by the plaintiff.

On the trial the plaintiff read the reports of the St. Lawrence Manufacturing Company for January 1, 1888, and January 1, 1889. Plaintiff also called as a witness Sylvester F. Hartley, who was a trustee of said company at said periods, and acted as treasurer or secretary. It was shown by the witness that he was at plaintiff's house on one occasion in 1890. He was asked : " Did you on that occasion state that Mr. Corbin (defendant) stated that it was necessary to put in these patents to cover the deficiency ? " The question referred to the report of 1889. The witness answered : " No, sir." He was further asked : " Q. Did you state to him that these were put in to cover a deficiency ? * * * A. Not to my knowledge. I will not swear that I didn't. Q. Did you state to Mr. Mason what else could they be put there for except to cover a deficiency ? * * * A. That was the position taken by Mr. Mason. Question repeated. A. No, sir. Possibly Mr. Mason did ask me if I put my name on that statement, and possibly I did tell him that I didn't put it there, but that I suppose Mr. Corbin did." The witness further testified : " I was not aware that any old and

worthless accounts went into the statement of January 1, 1888. Did not so state to Mr. Mason at his house at Carthage. Did not state to him that of $5,000 that went into that inventory they were not worth five cents on the dollar. Did not state to him that for the $7,000 I would not give over $2,000."

The above-quoted evidence of conversations of the witness with plaintiff was properly objected to by the defendant. It did not appear that the defendant was present. Hartley was plaintiff's witness, and, under well-settled principles, his testimony as to said conversations was hearsay and incompetent.

Afterwards Ezra E. Jenne was called by plaintiff, and testified as to the interview of Hartley with plaintiff at the latter's house. The witness was then, among other things, asked the following questions and made the following answers, defendant interposing the proper objections, after the witness had stated : " Met Mr. Hartley at Mr. Mason's house in February or March last. There was a conversation between them in reference to the annual statement of 1889. Q. Upon that occasion did Mr. Mason ask Mr. Hartley this question : What are the patents put in for ? * * * A. Yes, sir. Q. Did he reply, you can judge for yourself ? * * * A. That was not just the answer. Q. Did Mr. Mason say to him, I have my own opinion about it ; what do you think they were put in for ? * * * A. That was not the conversation. Q. Did Mr. Hartley say, what else could they be put in for except to cover up a deficit ? * * * A. Yes ; he did say that. On that occasion Hartley and plaintiff talked with reference to the statement of January 1st, 1888. Q. Did Mr. Hartley upon that occasion say that worthless accounts went into that statement under his objection ? * * * A. Yes, sir. Q. Did Hartley say there were $5,000 put in that he would not give five cents upon the dollar for ? * * * A. Yes, sir ; he said that. Q. Did he say with reference to the statement of January 1st, 1889, that he refused to sign that statement ? * * * A. He did. * * * Q. Did Mr. Hartley say to you on the train going to Champlain that he declined to sign the statement and left the room ? * * * A. He did."

The plaintiff was thus allowed by the referee to prove by his own witness conversations had between the plaintiff and the witness, and to impeach the statement of his own witness as to said conversa-

tions by proving contradictory statements made out of court. It is clear that such evidence was incompetent. (*People* v. *Safford,* 5 Den. 112; *Thompson* v. *Blanchard,* 4 N. Y. 303; *Pollock* v. *Pollock,* 71 id. 137, 138; *Becker et al.* v. *Koch,* 104 id. 394-401.)

We are unable to say that the evidence so improperly received was immaterial and did not affect the result. No such claim is made by the counsel for respondent.

For this error we feel compelled to direct a reversal of the judgment and a new trial of the case, with costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed and a new trial granted, costs to abide the event.