BARNARD L. STEEFEL et al., Appellants, *v.* JACOB ROTHSCHILD, Respondent.

1. LANDLORD AND TENANT — WHEN LESSOR LIABLE FOR LESSEE'S LOSS OCCASIONED BY REMOVAL OF GOODS FROM BUILDING ADJUDGED UNSAFE. The concealment of defects in a building which a lessee could not have discovered by the exercise of reasonable diligence constitutes a fraud and renders the lessor liable for rent paid in advance and a loss occasioned to fixtures and stock which the lessee is compelled to remove from the building by reason of a judgment obtained by the municipal authorities declaring it unsafe and directing its demolition.

2. SAME. Although the lessor may not know of the defects at the time of the execution of the lease, if the situation and condition of the building is such that it constitutes a public nuisance and he has knowledge of them before the lessee takes possession, it is his duty to abate the nuisance, and, if necessary, under his paramount duty to the public, to violate his obligation to deliver possession (remaining liable for the breach). Where he has such knowledge and permits the lessee to take possession, the latter's damages are the direct result of the lessor's continuous violation of law in maintaining an illegal structure to the commencement of the demised term, and he is liable therefor.

*Steefel* v. *Rothschild*, 85 App. Div. 630, reversed.

(Argued May 9, 1904; decided October 25, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 20, 1903, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin Countryman* and *Moses J. Harris* for appellants. The case should have been submitted to the jury on the question of fact whether the defendant deceived the plaintiffs in wrongfully suppressing from them the dangerous condition of the building, which rendered it a public and private nuisance. (*Cesar* v. *Karutz*, 60 N. Y. 229; *Wallace* v. *Lent*, 1 Daly, 481; *Jackson* v. *Odell*, 9 Daly, 371; *Jackson* v. *Odell*, 12 Daly, 345; *Staples* v. *Anderson*, 3 Robt. 327;

*Rhinelander* v. *Seaman*, 13 Abb. [N. C.] 455; *Sequard* v. *Corse*, 9 Wkly. Dig. 51; *Meyers* v. *Rosenback*, 5 Misc. Rep. 337; *Daly* v. *Wise*, 132 N. Y. 306; *Lathers* v. *Coates*, 18 Misc. Rep. 231.) There was ample evidence to warrant a finding that the defendant was guilty of a willful wrong or gross negligence in omitting to inform the plaintiffs of the dangerous condition of the building, and in making no effort to eliminate, or at least, lessen the danger. (Wood on Nuisances, 114, 123, §§ 113, 121; *Mullen* v. *St. John*, 57 N. Y. 567; *Timlin* v. *S. O. Co.*, 126 N. Y. 514; *Burrett* v. *L. O. B. I. Co.*, 174 N. Y. 310; *Sully* v. *Schmidt*, 147 N. Y. 248; *Tallman* v. *Murphy*, 120 N. Y. 345; *Dyett* v. *Pendleton*, 8 Cow. 727; *Thalheimer* v. *Lempert*, 49 Hun, 606; *Bradley* v. *Goicouria*, 67 How. Pr. 76; *Tallman* v. *Earle*, 3 Misc. Rep. 76; *Cesar* v. *Karutz*, 60 N. Y. 229.) The surrender of the premises by the tenants to the landlord did not affect their right of action. (*Boreel* v. *Lawton*, 90 N. Y. 293; *T. H. El. Co.* v. *D. L. Imp. Co.*, 144 N. Y. 34; *Goldberg* v. *Besdean*, 76 App. Div. 452.)

*John J. Crawford* and *Charles H. Brush* for respondent. The defendant was under no obligation to keep the building in repair or in a tenantable condition. (*Franklin* v. *Brown*, 118 N. Y. 110; *O'Brien* v. *Capwell*, 59 Barb. 504; *Cleves* v. *Willoughby*, 7 Hill, 83; *Daly* v. *Wise*, 132 N. Y. 306; *Sherman* v. *Ludin*, 79 App. Div. 37; *Witty* v. *Matthews*, 52 N. Y. 512; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354; *Bronner* v. *Walter*, 15 App. Div. 295; *Doupe* v. *Genin*, 45 N. Y. 119; *Jones* v. *Millsaps*, 71 Miss. 10.) As the only right of the plaintiffs was in the unexpired portion of the term, and as they elected to end the term by surrendering the lease, they lost nothing. (*Kelly* v. *Dutch Church*, 2 Hill, 106.) There was no proof of scienter, and hence no case of fraudulent concealment was made out. (*People* v. *Suydam*, 41 N. Y. 397; *Costigan* v. *Gould*, 5 Den. 290; *Robinson* v. *Wheeler*, 25 N. Y. 252.) The defendant could not be held liable for a mere omission to communicate his

knowledge to the plaintiffs. (*Dambmann* v. *Schulting*, 75 N. Y. 55; *Cleveland* v. *Smith*, 132 U. S. 318; *P. Bank* v. *Bogart*, 81 N. Y. 101; *Peek* v. *Gurney*, L. R. [6 H. L.] 403; *Wood* v. *Amory*, 105 N. Y. 278; *Graham* v. *Meyer*, 99 N. Y. 611.)

CULLEN, Ch. J.    This action was brought, tenants against landlord, for damages occasioned under the following circumstances: In 1894 the defendant had erected a large structure at the corner of Fulton and Jay streets in Brooklyn, eight stories high above the street, with a cellar and sub-cellar below that level. The walls for the first two stories consisted principally of iron arches supported by columns of the same material, which rested on brick piers. The building presented a handsome and imposing appearance. The greater portion of it had never been occupied until the lease made to the plaintiffs. On June 21st, 1898, the plaintiffs rented of the defendant by a written lease three of the six stores on the ground floor, with a portion of the next floor above, for the term of six months from September 1st, with the privilege of renewal for an additional term of five years, to be used as a store for the sale of clothing, men's furnishing goods and similar articles, at a specified rent, payable monthly in advance. On September 1st the plaintiffs entered into possession of the demised premises under the lease, placing in the stores the necessary fixtures and appliances as well as their stock of goods. On the 2nd of December the municipal authorities, under the provisions of the charter, instituted an action in the Supreme Court to compel the defendant to secure or take down said building, alleging it to be unsafe and dangerous to the public, and at the same time took possession of the premises and prevented the public from having access to the same or passing along the sidewalk adjacent thereto. On December 5th the plaintiff vacated the demised premises. On December 19th, after a trial, judgment was entered in the action declaring said building unsafe and in imminent danger of falling and directing the commissioner of buildings to remove the four

upper. stories of the building and to take down and remove the brick walls on Fulton and Jay streets, from the roof to and including the concrete foundation. The demolition thus adjudged was at once carried out. For the loss occasioned to the plaintiffs' fixtures and stock by their enforced removal and for rent paid in advance this action has been brought.

As the verdict was directed for the defendant the plaintiffs are entitled to have the evidence considered in its most favorable aspect, and all disputed questions of fact and the inferences therefrom must be resolved in their favor. The evidence tended to show, if it did not conclusively establish, that the building had been in an unsafe and dangerous condition for some time prior to the lease to the plaintiffs; that these defects, which did not appear in the parts of the building leased to the plaintiffs, were wholly unknown to them and were of such a character as reasonable diligence and inspection on their part would not have discovered. The complaint charged that at the time of the execution of the lease the defendant knew of the dangerous character of the structure and concealed that condition from the plaintiffs. As to this allegation it is claimed by the defendant that there was no proof that such knowledge was brought home to the defendant until in the latter part of July after the lease had been signed, though it is clear that he knew that in some respects the building was weak before that time. However that may be, it was clearly shown that in July the defendant was apprised by his architect that by the defects in the foundations, by the cracking and subsidence of the piers and from the improper character of the work the building was in imminent danger of collapse. The architect advised the defendant of the measures necessary to remedy the defects and insure the safety of the building. The defendant, however, took no steps in the premises but allowed the building to remain in its then present state. He in no manner apprised the plaintiffs of his information concerning the character of the structure and nothing developed in its appearance to warn

them of its insecurity until the proceedings taken by the municipal authorities.

The learned court below held the general rule of *caveat emptor* applied, that there was no covenant express or implied on the part of the landlord either to repair or that the premises were suitable for the purpose for which they would be used and that the only effect of the premises becoming untenantable was to permit the plaintiffs, under the provisions of chapter 345 of the Laws of 1860, to quit and surrender the premises and relieve themselves from further payment of rent. The learned court said : " We find no suggestion that the landlord may be held liable for damages resulting to the tenant by reason of the building being untenantable." In answer to these views it is first to be observed that the action is not for damages for eviction against the landlord in suffering the premises to become untenantable. The fault, if any, which rendered the defendant liable lay back of that. Doubtless the general rule is, as stated in *Jaffe* v. *Harteau* (56 N. Y. 398), that " A lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended." This doctrine has repeatedly been cited with approval (*Edwards* v. *N. Y. & Harlem R. R. Co.*, 98 N. Y. 245 ; *Franklin* v. *Brown*, 118 N.Y. 110 ; *Daly* v. *Wise*, 132 N. Y. 306), but the cases distinctly recognize the qualification that to relieve the landlord from liability there must be an absence of fraud. Thus in the *Edwards* case Judge EARL said : " If he (the landlord) demised premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which in many cases imposes liability upon him." In the *Franklin* case Judge VANN said : " It is not claimed that any deceit was practiced or false representations made by the plaintiff as to the condition of the house in question, or of its fitness for the purpose for which it was let. The defendant thoroughly examined

the premises before she signed the lease and she neither ceased
to occupy or attempted to rescind until the last quarter of the
term. Neither party knew of the existence of the offensive
odors when the contract was made. They were not caused
by the landlord and did not originate upon his premises, but
came from an adjoining tenement." In the *Daly* case Judge
FOLLETT said : " In case the owner of a dwelling knows that it
has secret defects and conditions rendering it unfit for a resi-
dence, and fraudulently represents to one who becomes a
tenant that the defects and conditions do not exist, or if he
fraudulently conceals their existence from him, the lessee, if
he abandons the house for such cause, will not be liable for
subsequently accruing rent." These cases thus also recognize
that concealment of secret defects may constitute fraud and
the point has been expressly decided in other cases. In *Cesar
v. Karutz* (60 N. Y. 229) the landlord let apartments infected
with smallpox of which he had notice but did not notify his
tenant, in consequence of which the latter caught the disease.
The landlord was held liable. In the opinion delivered by
this court in that case, there is no review of the earlier
decisions or discussion of the principle on which the liability
was placed, Judge RAPALLO confining himself to saying :
" There can be no doubt that if the facts were as alleged
by the plaintiff in the complaint, she had a good cause of
action." It was also held that the charge of the trial
court, " that if a landlord lets premises to a tenant and
they are infected and he knows it, it is his duty to let
the tenant know it," was correct. So in Massachusetts it was
held that an action in deceit would lie by tenant against a land-
lord for leasing an infected dwelling of the condition of
which he had knowledge but the tenant had not. (*Cutter
v. Hamlen,* 147 Mass. 471.) It was there said by Judge
HOLMES : " It is settled that a landlord may be liable for not
disclosing a concealed source of danger, known by him to be
such, and not discoverable by the tenant." (See, also, *Wallace
v. Lent,* 1 Daly, 481.) So far as relates to the danger to the
lessee or occupants of the building I do not see that the case

at bar can be distinguished from those arising from contagious diseases. The danger to life and limb from the collapse of a large building would certainly be as great as that from contagion, and from the proof in this case as to the condition of the building the jury might have found that it was just as imminent. We think also that on the evidence the jury might have found that the defects in the structure were concealed and that the plaintiffs could not by reasonable diligence have discovered them. Under these circumstances it is reasonably clear that had the defendant known of the dangerous condition of the premises at the time he leased them to the plaintiffs and concealed it he would have been liable, and this liability, as pointed out by Judge Earl in the *Edwards Case* (*supra*), arises not *ex contractu* but *ex delicto.*

It is contended, however, by the defendant that to such claim of liability it is a complete answer that the defendant was not shown to have known the dangerous condition of the building when he executed the lease to the plaintiffs, though he acquired such knowledge prior to the commencement of the demised term. It is said that the rights of the parties became fixed at the date of the lease and that whatever may have been his ethical duty he was under no legal obligation to apprise the plaintiffs of the facts which had come to his knowledge. Assuming, though only for the purposes of this discussion, that such may be the general rule, we think this case does not fall within it. The structure was not in a field distant from the public highway. It abutted the most traveled public street in the borough of Brooklyn. It was eight stories high. If in danger of immediate collapse, as the jury might have found, it was a menace to travelers passing along the street and constituted a public nuisance. (Wood on Nuisances, § 119; *Mullen* v. *St. John*, 57 N. Y. 567.) From the time that the defendant knew that such was its condition it was his duty to have abated the nuisance. He was in possession of the structure until the demise to the plaintiffs took effect. Whatever may have been his obligation to the plaintiffs under the lease to give them possession he, under his

paramount duty to the public, was bound to violate that obligation if necessary (remaining liable for the breach) and either make the building secure or remove it altogether. At least from the time that he knew of the danger the defendant was maintaining an illegal structure. The decree of the court in December did not create the duty to take down the walls of the building but simply enforced the performance of a duty which had existed long before. Had the defendant discharged his legal duty there would have been no building in which it would have been possible for the plaintiffs to enter and take possession. It was, therefore, the direct consequence of the defendant's continuous violation of law in the maintenance of an illegal structure from July to the commencement of the demised term that allured the plaintiffs into entering upon the premises. Their damage was the natural consequence of his unlawful act, and we think the decision in the present case can be safely placed on that ground. If the plaintiffs, however, knew or should have known of the danger, no liability would arise.

The judgment should be reversed and a new trial granted, costs to abide the event.

VANN, J. I dissent from the conclusion that the defendant, "under his paramount duty to the public, was bound to violate," if necessary, his covenant in the lease that the plaintiffs should "peaceably have, hold and enjoy the said premises for the" term of the demise, because I regard the proposition as doubtful and it is unnecessary to pass upon it in deciding this appeal. I concur in the result, however, because the evidence permitted the jury to find that the defendant knew that the premises were in a dangerous condition when he executed the lease and that, hence, he was guilty of fraudulent concealment. He erected the building and had been in possession of it for four years. Two years after it was built he received a notice from the building department which should have led a prudent man to investigate, and investigation would have led to discovery. If the structure was never safe, as the jury

could have found, they could also have found that he knew it was unsafe when he entered into the lease without disclosing that vital fact.

GRAY, BARTLETT, MARTIN, WERNER, JJ. (and VANN, J., in memorandum), concur with CULLEN, Ch. J.

Judgment reversed, etc.