MORTON *v.* HANES.

1. LANDLORD AND TENANT — COVENANTS — FRAUD — ACTION FOR RENT.

> In the absence of fraud there is no implied covenant that premises are fit for the purpose for which they are leased.

2. SAME—FRAUD AND DECEIT—RECOUPMENT.

> Where the landlord makes false or fraudulent representations as to material facts not obvious to the lessee, or, knowing such facts, of which the lessee is excusably ignorant, and which would seriously impair the value of the lease, conceals them, he may be held liable to the lessee for damages incurred in consequence thereof in an action for fraud and deceit, or the lessee may recoup damages in the landlord's suit for rent.

3. SAME—LEASE—DAMAGES—CONDITION OF PREMISES.

> While the tenant, by remaining in possession, waives the right to rescind the lease, he does not waive his claim for damages for the fraud and deceit whereby he was induced to enter into the lease.

Error to Washtenaw; Kinne, J. Submitted June 23, 1910. (Docket No. 54.) Decided July 14, 1910.

Assumpsit by Hudson T. Morton against Laura A. Hanes for rent. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*George J. Burke* (*M. J. Cavanaugh,* of counsel), for appellant.

*Blum & Sample* (*Arthur Brown,* of counsel), for appellee.

BLAIR, J. This is an action of assumpsit upon a lease, executed March 16, 1907, containing, among other provisions, the following:

"Witnesseth, that the said party of the first part has agreed to let, and does hereby let to the said party of the second part, and the said party of the second part has agreed to take, and hereby does take, from the said party of the first part the following described premises situated in the city of Ann Arbor, county of Washtenaw and State of Michigan, to wit, the house and premises known as number 611 Church street in the city of Ann Arbor, State of Michigan, to be occupied as a residence by said second party with the privilege of keeping roomers and boarders. On this lease all moneys that are due or to become due shall be deposited in the State Savings Bank of Ann Arbor, Michigan, to the credit of Hudson T. Morton. For the term of three years (with the privilege of making it five) to commence on the first day of September, 1907."

Defendant gave notice under her plea of the general issue that she would prove that at the time she rented the house the defendant falsely and fraudulently represented to her that the house could be properly heated by the furnace then in the house, and that, in reliance upon these representations, she went to great expense in fitting up the house to accommodate student roomers and suffered great damages, in consequence of the failure of the furnace to properly heat the house, which she would claim by way of recoupment.

Defendant occupied the house for 10 months and was finally ousted by summary proceedings, and this action was brought to recover the balance of the rent reserved in the lease.

In the course of the cross-examination of plaintiff, the following occurred:

"*Mr. Burke:* The defense is that under this lease there is a purpose for which this house was leased, that it was unfit for that purpose and Mr. Morton made certain representations. We have given notice in our plea that he made these representations. The lease was made with the privilege of keeping roomers. We expect to show that it was not only the privilege, but the purpose of the renter in accepting the contract. I think we have the right to show what the intent and purpose of the lease or contract is. This is not an attempt to change or vary the terms of the written agreement in any sense.

"*The Court:* What do you say to that?

"*Mr. Brown:* I think the arrangement was finally merged in the written instrument and that shows.

"*Mr. Burke:* We ought to be able to show any legal defect in those premises which was known to the plaintiff, but could not be known to the defendant, and which would entirely change the consideration of the lease.

"*The Court:* The language of this lease is that it was with the privilege of keeping roomers and boarders. If you are seeking to show that the house was not suitable by reason of this poor heating plant it is my impression that it is not competent evidence, and that you cannot show it. You are not entitled to show that the house was not properly heated, that the heating arrangements would not heat the house properly. This case was tried once before and that testimony was admitted, but on reflection I am satisfied that was not competent. My present view is that I ought not to admit it."

Defendant testified in her own behalf:

"The first thing I asked him (Morton) on the 15th day of March was whether the house would heat.

"*Mr. Brown:* I object to any conversation at this time for the reason that it was merged in the written contract.

"*The Court:* I am inclined to think if you seek to show the heating plant of this house was inadequate to heat the rooms properly you are not entitled to show that under this lease. That is not a defense to an action on this lease. If the heating plant was inadequate she was under no obligation to remain there, but if she did she is bound by it, and it would be no defense to an action for rent to show that that house was not properly heated.

"*Mr. Burke:* We take exception to the ruling of the court. Do I understand that the fact that the defendant had relied upon the representations of Mr. Morton, and had purchased furniture and moved there with the idea of keeping roomers, and she found she could not do so (because of the imperfect heating) that that defense could not be interposed to avoid payment of rent?

"*The Court:* Yes. Somewhat reluctantly I came to that conclusion, but I am satisfied that there is no implied guaranty that the apparatus is sufficient to heat according to her notion.

"*Mr. Burke:* We take exception to the ruling of the court. The case turns upon whether or not the defect in

the heating plant can be shown in defense on this action. We have no further testimony."

The court directed a verdict for plaintiff, and defendant brings the record to this court for review.

The position of defendant is shown by the following extract from the brief:

"We contend that the failure of the heating plant to operate in a manner suitable for the purpose for which the house was rented caused the consideration for which the defendant was to pay rent, to utterly fail.

"'The law will not imply any covenant or warranty * * * with regard to the physical condition of the premises at the time of the letting, that they are in a tenantable condition.'

"This is the general rule as laid down in 18 Am. & Eng. Enc. Law (2d Ed.), p. 613. But, where the lease limits the use of the premises to certain specified purposes without showing any intent on the part of the parties that the lessee should fit them for such purposes, there is an implied stipulation that the premises are fit for the specified purposes. This is identically the case in the lease under consideration. 1 Taylor on Landlord and Tenant (9th Ed.), p. 481. This rule is followed by the case of *Young* v. *Collett*, 63 Mich. 331 (29 N. W. 850), which is the leading case on this question arising upon a lease."

The general rule undoubtedly is that, in the absence of fraud, there is no implied covenant that premises are fit for the purpose for which they are leased. *Doyle* v. *Railway Co.*, 147 U. S. 413 (13 Sup. Ct. 333); *Jaffe* v. *Harteau*, 56 N. Y. 398 (15 Am. Rep. 438); *Clark* v. *Babcock*, 23 Mich. 164; *Rhoades* v. *Seidel*, 139 Mich. 608 (102 N. W. 1025).

In *Young* v. *Collett*, 63 Mich. 331 (29 N. W. 850), upon which defendant relies, it is said:

"When a landlord rents a building, and in the lease, as in this case, limits its use to a certain specified purpose, and the tenant agrees to do no more than keep the same in as good repair as when taken, it is evident that the landlord recommends the building as suitable for that purpose in the condition it then is, if there are no modify-

162 MICH.—24.

ing clauses to the contrary contained in the lease, and it should be so held; otherwise there would be no consideration for the tenant's agreement to pay rent. *Tyler* v. *Disbrow,* 40 Mich. 415; *Smith* v. *Marrable,* 11 Mees. & W. 5; *West Side Sav. Bank* v. *Newton,* 76 N. Y. 616; *Salisbury* v. *Marshal,* 4 Car. & P. 65."

This language was unnecessary to the determination of the case. The defendants had given up the room to the plaintiff for repairs, and he had taken possession for that purpose and taken up the floor of the lodgeroom, rendering the room untenantable,—

"And it was while in this situation the defendants were unable to get the landlord to make the needed change and repairs. This neglect to make the change and repairs necessary was, under all the circumstances, an eviction by the landlord."

Where, however, the landlord makes false or fraudulent representations as to material facts not obvious to the lessee, or, knowing such facts, of which the lessee is excusably ignorant, and which would seriously impair the value of the lease, conceals them, he may be held liable to the lessee for damages incurred in consequence thereof, in an action for fraud and deceit, or the lessee may recoup such damages in the landlord's suit for rent. *Steefel* v. *Rothschild,* 179 N. Y. 273 (72 N. E. 112); *Pryor* v. *Foster,* 1 N. Y. Supp. 774; *Norris* v. *McFadden,* 159 Mich. 424 (124 N. W. 54).

While the tenant, by remaining in possession, waives the right to rescind the lease, he does not waive his claim for damages for the fraud and deceit whereby he was induced to enter into the lease. *Pryor* v. *Foster, supra.*

We are therefore of the opinion that the court erred in refusing to permit defendant to show the alleged false and fraudulent representations as to the furnace set up in her notice.

The judgment is reversed and a new trial granted.

BIRD, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.