### SILL v. O'ROURKE.

1. LANDLORD AND TENANT—IMPLIED COVENANTS—FITNESS FOR PURPOSE LEASED.

Generally, in the absence of fraud, there is no implied covenant by the landlord that premises are fit for the purpose for which they are leased; except as they may be limited in use to a specific purpose.

2. SAME—WATER—INDEPENDENT PROMISE—CONSIDERATION.

A landlord, unless he has agreed to do so, is not ordinarily bound to furnish water to his tenant, and in the absence of any obligation under the lease to furnish water for the use of the tenant, an independent promise by the landlord to furnish adequate water must be based upon sufficient consideration.

3. EVIDENCE—COLLATERAL AGREEMENT AS INDUCEMENT TO WRITTEN CONTRACT.

Parol evidence is admissible to establish a collateral agreement operating as an inducement for entering into a written contract.

4. LANDLORD AND TENANT—WATER—IMPLIED COVENANTS—EVIDENCE.

Evidence in landlord's suit to collect unpaid rent and insurance cost and interest thereon under written lease obligating defend-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 32 Am Jur, Landlord and Tenant § 654.
Effect of nonhabitability of leased dwelling or apartment. 4 ALR 1453, 13 ALR 818, 29 ALR 52, 34 ALR 711.
[2] 32 Am Jur, Landlord and Tenant §§ 654, 655.
[3] 20 Am Jur, Evidence §§ 1140, 1141.

ant tenants to make such payments *held*, not to show landlord was under an implied obligation to change the situation in event the water supply from the well on the premises proved inadequate to supply the needs of defendant who continued to conduct an automobile sales and service business plaintiffs had theretofore operated.

Appeal from Jackson; Robinson (Thomas N.), J., presiding. Submitted January 8, 1958. (Docket No. 19, Calendar No. 47,196.) Decided April 15, 1958. Rehearing denied June 11, 1958. Certiorari denied by the Supreme Court of the United States October 13, 1958.

Action by Henry W. Sill and Bernice E. Sill against James S. O'Rourke, Jr., and Joan O'Rourke for rents due on leased premises. Recoupment based on wrongful eviction and failure to furnish water supply. Directed verdict and judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Kleinstiver & Anderson,* for plaintiffs.

*Kelly, Kelly & Kelly,* for defendants.

CARR, J. Prior to June 1, 1953, plaintiffs owned and occupied certain premises in Summit township, Jackson county, described as 1825 Spring Arbor road. They had operated thereon an automobile sales and service business. Certain structures used in connection with the business were located on the property, including a garage, a quonset hut, and a concrete slab on which cars were exhibited.

On the date mentioned, June 1, 1953, plaintiffs leased the property in question to defendants for a 3-year period, at a monthly rental of $500 per month "to be occupied for automobile sales and service and in no case to be used for any business deemed extra hazardous on account of fire." In the event that any instalment of rent remained unpaid for more than 15 days, defendants' liability was increased to the

sum of $525. The lessees were required to keep the premises insured, and to maintain the interior thereof in good condition and repair. Plaintiffs assumed responsibility with reference to the exterior of the buildings and the roofs thereon. It was further provided in the lease that "Second parties shall promptly pay when due all water, electric, sewage, and utility charges for services on or to the leased premises."

At the time of the execution of the lease there was located on the premises a well, equipped with a pump or pumps, designed to furnish water for use in connection with business operations thereon. It may be noted in this connection that defendant James S. O'Rourke, Jr., had managed the sales and service agency for plaintiffs during a period of some months prior to the execution of the lease. It may be assumed that he was familiar with the source of the water supply. After defendants went into possession on or about June 1, 1953, they formed a corporation to which was issued a franchise for the operation of an automobile sales agency. They proceeded with that business and, also, a service business involving the handling of automobiles.

In August, 1953, lessees complained to plaintiffs that the water supply was inadequate. Apparently there was a shortage of rainfall at the time, and in the expectation that the condition would correct itself within a brief period no action was taken to deepen the well or otherwise obtain an added supply of water. However, the complaints continued, and at some time during the following winter plaintiffs and defendants agreed to deepen the well at their joint expense. This agreement was carried out, the record not showing when the work was actually done. It is a matter of inference that thereafter the water supply was sufficient for the purpose of the business conducted on the premises. Other difficulties arose

between the parties and on or about April 20, 1954, defendants vacated the property. At that time they had not paid the rental for the month of November, 1953, or for the first 4 months of 1954. Plaintiffs instituted the instant action to recover the rental for said months at the rate of $525 per month, and, also, to recover a portion of the amount paid by them for insurance, assumed by defendants under the lease, together with interest on said amounts.

Defendants filed answer to the declaration, alleging that plaintiffs had failed to perform all of the covenants assumed by them under the contract. More specific reference to the defense indicated was made in a claim of recoupment attached to the answer, which claim was based, in part, on the theory that plaintiff lessors were obligated to furnish defendants with sufficient water to permit the proper carrying on of the business for which the premises had been leased. The further claim was made that lessors had failed to maintain the roof of the garage, with resulting damage to defendants. Subsequently defendants sought leave to amend their claim of recoupment by adding thereto allegations that lessors had wrongfully evicted them from the premises, and, also, by bringing in matters not directly connected with the lease or the acts of the parties thereunder. Plaintiffs filed objections to such proposed amendments, which resulted in an order allowing defendants to counterclaim for damages with respect to the alleged failure on the part of plaintiffs to furnish water service, for failure to keep the garage roof in repair, and for the wrongful eviction. Leave to amend was denied as to other matters sought to be raised.

The case was brought on for trial before the circuit judge and a jury on January 29, 1957. The testimony of Henry W. Sill was introduced on behalf of plaintiffs, which testimony fairly disclosed the facts

claimed with reference to the water shortage and the action taken to correct the situation in that respect. Plaintiffs then rested, and counsel for defendants moved for a directed verdict on the ground that, under the lease, plaintiffs were bound to furnish defendants sufficient water to permit the proper carrying on of the business in question, that plaintiffs had failed to do so, that, in consequence, the lessees were deprived of the full use and enjoyment of the premises, and that plaintiffs were barred from the recovery of rent on the theory of a constructive eviction. Following argument by counsel the court announced that he would reserve decision on the motion.*

Defendants introduced the testimony of a witness who became an employee of the plaintiffs on or about March 1, 1953, and who continued with the defendants when their lease went into effect. The testimony of said witness indicates that at times the water supply was not satisfactory prior to the execution of the lease, and likewise thereafter. However, the trial judge, following the testimony of the witness, proceeded to determine the motion as of the close of plaintiffs' proofs. As appears from the record before us, verdict in favor of defendants was directed on the ground that plaintiffs had assumed the obligation claimed on behalf of defendants in their motion, and could not, in consequence, recover rent. In the course of the argument reference was made by the circuit judge to the pleaded recoupment, to which counsel for defendants replied, in substance, that, if verdict was directed as requested, consideration would be given to the matter of putting in proof on the counterclaim. Apparently it was concluded that, the motion of defendants having been granted, the counterclaim would not be submitted on the merits.

* See CL 1948, § 691.691 et seq. (Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 et seq.).—REPORTER.

From the judgment entered in defendants' favor, following the directed verdict, plaintiffs have appealed. It is their claim, in substance, that there was no implied covenant under the lease requiring them to furnish sufficient water to defendants to enable the latter to carry on their business, and that they had assumed no obligation, by agreement express or implied, to do so. On behalf of appellees it is contended that the verdict in their favor was properly directed.

In support of the claim that there was no implied covenant binding lessors to furnish sufficient water to enable the premises to be used for the purpose for which they were leased, counsel have cited *Morton* v. *Hanes,* 162 Mich 366 (139 Am St Rep 566). There plaintiff brought an action on a lease to recover rent of a house that the lessee intended to use for roomers. A plea of the general issue was filed to plaintiffs' declaration, and a claim of recoupment based on averments that the lessor had falsely and fraudulently represented that the house could be heated by the furnace therein. On the trial it was the position of defendant's counsel that the failure of the heating plant to properly function so as to permit the premises to be used for the purpose intended caused the consideration for the agreement to pay rent to wholly fail. In rejecting such claim it was said (pp 369, 370):

"The general rule undoubtedly is that, in the absence of fraud, there is no implied covenant that premises are fit for the purpose for which they are leased. *Doyle* v. *Union Pacific R. Co.,* 147 US 413 (13 S Ct 333, 37 L ed 223); *Jaffe* v. *Harteau,* 56 NY 398 (15 Am Rep 438); *Clark* v. *Babcock,* 23 Mich 164; *Rhoades* v. *Seidel,* 139 Mich 608 (18 Am Neg Rep 135).

"In *Young* v. *Collett,* 63 Mich 331, 336, upon which defendant relies, it is said:

" 'When a landlord rents a building, and in the lease, as in this case, limits its use to a certain specified purpose, and the tenant agrees to do no more than keep the same in as good repair as when taken, it is evident that the landlord recommends the building as suitable for that purpose in the condition it then is, if there are no modifying clauses to the contrary contained in the lease, and it should be so held; otherwise there would be no consideration for the tenant's agreement to pay rent. *Tyler* v. *Disbrow,* 40 Mich 415; *Smith* v. *Marrable,* 11 Mees & W 5 (152 Eng Rep 693); *West Side Savings Bank* v. *Newton,* 76 NY 616; *Salisbury* v. *Marshal,* 4 Car & P 65 (172 Eng Rep 609).'

"This language was unnecessary to the determination of the case. The defendants had given up the room to the plaintiff for repairs, and he had taken possession for that purpose and taken up the floor of the lodgeroom, rendering the room untenantable, —

" 'And (p 337) it was while in this situation the defendants were unable to get the landlord to make the needed change and repairs. This neglect to make the change and repairs necessary was, under all the circumstances, an eviction by the landlord.'

"Where, however, the landlord makes false or fraudulent representations as to material facts not obvious to the lessee, or, knowing such facts, of which the lessee is excusably ignorant, and which would seriously impair the value of the lease, conceals them, he may be held liable to the lessee for damages incurred in consequence thereof, in an action for fraud and deceit, or the lessee may recoup such damages in the landlord's suit for rent. *Steefel* v. *Rothschild,* 179 NY 273 (72 NE 112, 1 Ann Cas 676); *Pryor* v. *Foster,* 1 NYS 774; *Norris* v. *McFadden,* 159 Mich 424.

"While the tenant, by remaining in possession, waives the right to rescind the lease, he does not waive his claim for damages for the fraud and deceit whereby he was induced to enter into the lease. *Pryor* v. *Foster, supra.*

"We are therefore of the opinion that the court erred in refusing to permit defendant to show the alleged false and fraudulent representations as to the furnace set up in her notice."

The statement of the Court in the above-cited case with reference to the general rule governing the existence of an implied covenant in cases of this nature is in accord with generally recognized principles applicable thereto. In 3 Thompson on Real Property (Perm ed), § 1369, pp 557, 558, in discussing liability of a lessor for water furnished to his lessee, it is said:

"In the absence of agreement, a landlord is not bound to pay tax rates for city water used by the tenant, though the house is piped therefor. The landlord is under no greater obligation than he would be to pay for gas, because the house demised is piped for gas. The lessee can not recover amounts paid on this account without showing in some way that the lessor was liable for the water rates. No agreement to pay them could be implied because the water was essential to the premises for the purpose for which they were leased. It can hardly be said that the landlord impliedly agrees to pay for whatever is essential to the use of the premises which he leases."

In *Leighton* v. *Ricker*, 173 Mass 564 (54 NE 254), an action was brought to recover for rent of a hotel. Defendant lessee sought to counterclaim for moneys paid by him for water, apparently on the theory that he had made such payments by mistake. There was no covenant in the lease relating to the matter, and nothing was said therein about payments for water. Judgment was rendered in the trial court in plaintiff's favor. In affirming that result, it was said (p 566):

"We think that the ruling was right. The water rates did not constitute a lien on the premises which

the plaintiff ultimately would have been obliged to pay, as in the case of taxes. *Turner* v. *Revere Water Co.*, 171 Mass 329 (50 NE 634, 40 LRA 657, 68 Am St Rep 432). The payment by the defendants lacked therefore the justification which perhaps it is possible that such a fact might have furnished under some circumstances. The defendants cannot recover without showing that the plaintiff was liable in some way for the water rates. It is not contended that she agreed to pay them. And we do not think that any agreement on her part to pay them can be implied, because the water was essential to the premises for the purpose for which they were leased. It hardly can be said, we think, that a landlord impliedly agrees to pay for whatever is essential to the use of the premises which he leases. There was nothing in the conduct of the plaintiff to constitute a liability by estoppel, and the fact that the defendants may have misapprehended the effect of the lease can, of course, furnish no ground for recovery against the plaintiff."

In accord with the foregoing is the statement in 32 Am Jur, Landlord and Tenant, § 179, p 172, that:

"A landlord, unless he has agreed to do so, is not ordinarily bound to furnish water to his tenant, and in the absence of any obligation under the lease to furnish, or have furnished, water for the use of the tenant, an independent promise by the landlord to furnish adequate water must be based upon sufficient consideration."

See, also, 51 CJS, Landlord and Tenant, §§ 297, 298, pp 950–952.

As before noted, the lease in the instant case was wholly silent with reference to the furnishing of water. The question is presented, however, whether there was a collateral independent promise, either express or implied, binding the plaintiff lessors to furnish to defendants for the period of the lease a sufficient amount of water to enable the latter to

carry on their business on the premises in a satisfactory manner. Counsel for defendants rely on *Stimac* v. *Wissman*, 342 Mich 20. There the defendants who owned certain real estate located near the city of South Haven had constructed thereon a building suitable for use as a drive-in restaurant. No municipal water supply was available to the property. One of the defendants owned an adjoining parcel, subject to a life interest in her parents, on which there was an operating well. Water was piped from this well to the restaurant. Such was the condition existing when the plaintiffs leased the property for a term of 10 years, for restaurant and lunch-stand purposes. Nothing was said in the lease with reference to the water supply. There was, however, testimony in the case that one of the defendants had informed the lessees that the water supply was sufficient for the business, such statement apparently being made after the execution of the lease but indicating the intention of the parties with reference thereto. Difficulties arose and as a result the defendant lessors attempted to force an adjustment of differences by interfering with the water supply. Plaintiff lessees employed a well driller with the purpose in mind of obtaining a water supply of their own. Lessors attempted to interfere with this operation, but apparently the well was constructed.

Because of the repeated difficulties between the parties, the tenants brought suit in equity against the lessors to enjoin interference with their leasehold, and for the recovery of damages. Lessors filed a cross bill asking cancellation of the lease. Following trial, the plaintiffs had decree, from which defendants appealed. It was their position that they were under no obligation to furnish water to the plaintiffs, and that parol testimony was not competent for the purpose of establishing an express or implied agreement with reference to the matter. On appeal, this

Court took the view that the general rule with reference to parol evidence does not operate to bar such proof when offered to establish a collateral agreement operating as an inducement for entering into a written contract. *Clare County Savings Bank* v. *Featherly*, 173 Mich 292, 302.

In passing on the situation disclosed by the record in the *Stimac Case*, attention was directed to the fact that water was being supplied to the building at the time the restaurant business was commenced, and at the time the lease was executed. This Court concluded from the facts disclosed by the proofs that there was an implied, if not an express, undertaking on the part of the defendants to furnish water for the duration of the lease. In accordance with the conclusions reached, the decree of the trial court was affirmed. It will be noted that the question at issue had reference to the right of the tenants to be furnished water through the facilities that were in operation at the time they made their agreement. Such supply apparently was adequate. The Court was not concerned with the situation that would have been presented had the existing well proved inadequate to service the restaurant, and the decision may not be regarded as authority for the proposition that in such event the lessors would have been bound to furnish other, or added, facilities. Furthermore, the acts of which plaintiffs complained in their suit for injunctive relief and for damages amounted to affirmative interference with the contractual obligation that defendants Wissman had assumed. The lessees sought relief in equity to the end that they might be protected in their contractual rights from interference by lessors. The questions at issue were not, as to the relief sought, analogous to those involved in the case now before us. In view of the factual differences, the *Stimac Case* is not controlling here.

In the case at bar the right of the defendant lessees to use the water from the well on the premises is not in question. It does not appear that plaintiffs at any time interfered in any way, shape or manner, with that right. On the contrary, by their conduct they recognized the right of the tenants to insist on a continuance of the situation existing at the time of the lease, and with reference to which the parties contracted. Plaintiffs and defendants alike were familiar with the situation existing on the 1st of June, 1953. They knew the source from which the water used in the business was being obtained. We may infer that they contemplated a continuance of the situation in such respect, but there is nothing in this record that implied an undertaking on the part of the lessors that if for any reason the water supply from the well should fail, or become inadequate, plaintiffs would in some way change the situation by added facilities in order to keep the water supply at all times adequate for the demands thereon. Had municipal water service been obtained, defendants, under the terms of the lease, would have been chargeable with the cost of the water furnished from such source. It may be assumed, also, that after the well was deepened by the joint efforts of the parties, each paying a proportionate share of the cost, the entire premises were available for the purposes for which defendants desired to use them. During such period, however, the rent was not paid.

Counsel for defendants cite, also, *Grinnell Bros.* v. *Asiuliewicz,* 241 Mich 186. As in the *Stimac Case,* that was an action by a tenant to enjoin interference with the right of beneficial enjoyment under the lease. It furnishes another instance in which the lessor by affirmative action interfered with the lessee in the carrying on of the latter's business. The controlling issue was not the existence of an implied contract but, rather, whether defendants had been guilty of

such a breach of a covenant of the lease as to justify the granting of equitable relief.

Under the facts in the instant case, insofar as they are disclosed by the record before us, there is no factual basis to support the claim that plaintiffs, either expressly or impliedly, assumed the obligation to furnish water facilities, in addition to those on the premises, if necessary to meet the demands of defendants' business. A contrary holding would result in imposing on the lessors an obligation substantially equivalent to a covenant therefor. The trial judge was in error in directing a verdict for the defendants. On the record before us plaintiffs were, and are, entitled to judgment for the amount of the rental and insurance claimed, together with interest.

The case is remanded with directions to set aside the judgment, and to enter judgment in accordance herewith.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.