WILLIAM JUNKERMANN, an Infant, by OTTO J. JUNKER-
MANN, His Guardian ad Litem, Appellant, *v.* TILYOU
REALTY COMPANY et al., Defendants, and SAMUEL
JANKELSON, Repondent.

*Negligence — amusement parks — duty of owners or lessees
thereof to keep structures in such places safe for public use —
liability of owner, or lessee, for negligence although place in
possession of sub-lessees.*

1. Where a place is designed and maintained as an amusement
park for public use, the nature of the use itself creates the duty of
keeping the place safe, and an owner is as much bound to repair a
structure that endangers travelers on a walk in such park as he is a
structure that endangers travelers on a highway, and must use all
reasonable care to make its structures safe before he leases it for his
profit. This duty cannot be evaded by exacting a covenant to repair.

2. A lessee for a term of years of an amusement park at the sea-
shore, which included, among other fixtures, a long board walk
built upon piles driven in the sand, agreed with his lessor that the
walks and streets should be kept clear and open as thoroughfares.
Subsequently such lessee sublet the premises with a like covenant.
The sub-lessees again assigned their lease to a corporation of

which the first named lessee is the president and one of the chief stockholders. Subsequently, there was a baby parade at the park. During the parade a part of the board walk collapsed, and the plaintiff, a little boy, who was one of the spectators, suffered injuries for which he brings the action against the owners of the park, the first named lessee and the corporation to which the lease was assigned by his sub-lessees. There was evidence that the collapse of the board walk was due to an extensive and long-continued decay of a supporting pile and that this dangerous condition antedated the lease and that reasonable inspection would have disclosed it. *Held*, that it was error to reverse the judgment against said lessee and dismiss the complaint as to him if he knew or ought to have known of the dangerous condition; and that it was his duty to end the danger before he leased the walk for public use, and if he failed to do so he continued liable till it was done by others, since he did not, by his lease to the sub-lessees, prohibit the use of the property until repairs had been made; whether he knew or ought to have known its true condition was a question for the jury.

*Junkermann* v. *Tilyou Realty Co.*, 160 App. Div. 892, reversed in part.

(Argued December 10, 1914; decided January 12, 1915.)

APPEAL from so much of a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 14, 1914, upon a order reversing a judgment in favor of plaintiff against the defendant, appellant, and as to that defendant directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry M. Dater, Jay S. Jones* and *Edward J. Fanning* for appellant. The walk fell through a defective condition which existed during the occupancy of Samuel Jankelson and of which he either knew or ought in the exercise of reasonable diligence to have known. (*Fox* v. *Buffalo Park*, 21 App. Div. 321; 163 N. Y. 559; *Connell* v. *Jankelson*, 163 App. Div. 592; *Schnitzer* v. *Phillips*, 108 App. Div. 17; *Barrett* v. *L. O. B. Imp. Co.*, 174 N. Y. 316; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514, 523, 524.) The defendant Jankelson was liable to the

plaintiff notwithstanding his sub-lease to the defendant Jankelson Realty Company. (*Swords* v. *Edgar*, 59 N. Y. 28; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514; *Barrett* v. *L. O. B. Imp. Co.*, 174 N. Y. 310; *Fox* v. *Buffalo Park*, 21 App. Div. 312; 163 N. Y. 559.)

*Hugo Hirsh* and *Horace London* for respondent. The respondent, who was a lessor out of possession at the time the accident occurred and over four months prior thereto, cannot be held, unless it is shown that when he executed the lease the premises were in a state of disrepair, that he had actual knowledge of such condition when he leased them or that the premises at the time he leased them were in such a state of disrepair as to amount to a nuisance and that he was asked to abate it. (*Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Stefel* v. *Rothschild*, 179 N. Y. 273; *Flynn* v. *Central R. R. Co.*, 142 N. Y. 439; *Martin* v. *Pettit*, 117 N. Y. 118; *Wolf* v. *Kilpatrick*, 101 N. Y. 146; *Jaffe* v. *Harteau*, 56 N. Y. 398; *Clancy* v. *Byrne*, 56 N. Y. 129; *Howel* v. *Henderson*, 22 App. Div. 557; *Dutton* v. *Greenwood Cemetery Co.*, 80 App. Div. 352.) Even if respondent were in possession of the premises at the time of the accident, the judgment was properly reversed and the complaint dismissed because it was conclusively shown that the accident was neither the fault of the lessor or lessee and the cause of the accident was clearly explained. (*Howell* v. *Henderson*, 22 App. Div. 557; *Schnitzer* v. *Phillips*, 108 App. Div. 17; *Flynn* v. *C. R. R. Co.*, 142 N. Y. 439; *Larkin* v. *O'Neill*, 119 N. Y. 221; *Hart* v. *Grennell*, 122 N. Y. 371; *Newell* v. *Bartlett*, 114 N. Y. 399.)

CARDOZO, J. In January, 1911, the Tilyou Realty Company leased to Samuel Jankelson for fifteen years an amusement park, with its pavilions and other fixtures, at Rockaway Beach. The park was laid out with streets, and included a board walk about 2,000 feet long. This

board walk was built upon piles which were driven into the sand. The tenant Jankelson agreed in the lease not to use the premises for any other business than that which was then conducted there, or one substantially the same. He also agreed that the walks and streets would be kept clear and open as thoroughfares. Four months later, on April 22, 1911, he sublet the premises for ten years to his wife and two business associates. There was a like covenant as to the use of the premises and a like covenant that the walks and streets would be kept clear and open as thoroughfares. On the same day the sublessees assigned their lease to the Jankelson Realty Company. Samuel Jankelson is president of that corporation, and one of its chief stockholders. In August, 1911, there was a baby parade at the park. During the parade a part of the board walk collapsed, and the plaintiff, a little boy, who was a spectator, suffered injuries for which he sues. He recovered a verdict against both Jankelson and the Jankelson Realty Company. At the Appellate Division the judgment against Jankelson was reversed, and the complaint as to him was dismissed. The plaintiff appeals to this court.

The property as Jankelson sublet it, was intended for public use. It was not suited for anything else. No one foresaw this use more fully than Jankelson himself. He had covenanted with his own lessor that the walk would be kept open as a thoroughfare, and he exacted a like covenant from his own lessees. He knew that the need of maintaining the walk in safety was as great as if it had been dedicated as a public highway. He was himself to profit from the use which he had in view, both as a landlord in receipt of rent, and as a stockholder interested in the company which was to maintain the park. In this situation, if there existed when he made his lease a dangerous condition that was known to him, or by reasonable inspection might have been known, the law charges him with liability. It has been said

that in the absence of fraud (*Steefel* v. *Rothschild,* 179 N. Y. 273) there is no law against letting a tumble-down house. (*Cavalier* v. *Pope,* [L. R.] A. C. 1906, 430; *Robbins* v. *Jones,* 15 C. B. [N. S.] 221.) But that statement depends for its accuracy upon many conditions. It is not true if the building is to be used by the public. It is not true if its location makes it a menace either to the passerby or to adjoining owners. The tumble-down structure so unsafe as to threaten the traveler in the highway is a nuisance, even though a lessee may be willing to accept it in that state. (*Steefel* v. *Rothschild,* 179 N. Y. 273, 279; *Timlin* v. *Standard Oil Co.,* 126 N. Y. 514, 523; *Nugent* v. *B. C. & M. Railroad,* 80 Me. 62, 77.) The tumble-down structure designed for the public use, but so unstable as to threaten the safety of those who enter it, is equally a nuisance. (*Fox* v. *Buffalo Park,* 21 App. Div. 321; 163 N. Y. 559; *Swords* v. *Edgar,* 59 N. Y. 28, 34.) Liability does not arise unless the dangerous condition is known, or with the exercise of due care ought to have been known (*Edwards* v. *N. Y. & H. R. R. Co.,* 98 N. Y. 245; *Timlin* v. *Standard Oil Co., supra*), and so the action has taken the form indifferently of one for nuisance or for negligence. (*Trustees of Canandaigua* v. *Foster,* 156 N. Y. 354; *Uggla* v. *Brokaw,* 117 App. Div. 586, 591; *Lusk* v. *Peck,* 132 App. Div. 426, 432; 199 N. Y. 546; *Hogle* v. *Franklin Mfg. Co.,* 199 N. Y. 388, 391.) But whatever the form of pleading the basis of liability is the same. We may say that those who enter a structure designed for public amusement are there at the invitation, not only of the lessee who maintains it, but also of the lessor who has leased it for that purpose, and that the latter's liability is merely an instance of the general rule which charges an owner of property with a duty toward those whom he invites upon it. (*Heskell* v. *Auburn L., H. & P. Co.,* 209 N. Y. 86; *Swords* v. *Edgar, supra.*) We may say more simply, and perhaps more wisely, rejecting the

fiction of invitation, that the nature of the use itself creates the duty, and that an owner is just as much bound to repair a structure that endangers travelers on a walk in an amusement park as he is to repair a structure that endangers travelers on a highway. Whatever the underlying principle that explains the rule, the rule itself is settled. The owner of such a park must use all reasonable care to make its structures safe before he leases it for <u>his profit</u>. In *Lusk* v. *Peck* (*supra*) the defendant had leased a grand stand and bleachers to be used for baseball games. The lease was for a term of years. The plan of the structure was proper. Some of the timbers, however, had decayed before the lease was made. Because inspection would have disclosed the defect, the landlord was held liable. The same rule of liability has been enforced under many varying conditions. (*Barrett* v. *Lake Ontario Beach Imp. Co.*, 174 N. Y. 310; *Fox* v. *Buffalo Park, supra; Timlin* v. *Standard Oil Co.*, *supra; Swords* v. *Edgar*, *supra; Connell* v. *Jankelson*, 163 App. Div. 592; *Francis* v. *Cockrell*, L. R. [5 Q. B.] 501.) Since the duty is imposed by law, it cannot be evaded by exacting from the tenant a covenant to repair. (*Ahern* v. *Steele*, 115 N. Y. 203, 209; *Swords* v. *Edgar*, *supra*, at p. 33; *McGovern* v. *Cent. Vt. R. R. Co.*, 123 N. Y. 280.) We think there was evidence in this case that the dangerous condition antedated the lease, and that reasonable inspection would have disclosed it. The collapse of the walk was due to the decay of a supporting pile. The decay had progressed so far that the wood, when examined after the accident, crumbled in one's hand. There is evidence that this decay could not occur in less than five or six years. There was thus an opportunity to learn of the condition of the walk. Not only was there this opportunity for knowledge, but the evidence tends to show that the walk was in fact known by Jankelson to be in a condition of decay. Even before he made his lease, he had

employed men to repair it, but they did not do their work till later.    Accepting the testimony of the defendant's witnesses, we find, not a single decayed timber as the defendant's argument assumes, but a multitude of them, with the result that the walk must have been at the date of the sublease in a ruinous condition.    Many of the defective timbers were removed, and sound timbers substituted.    The one that caused the accident was apparently overlooked.    There is evidence that its defects, like those in the other timbers, might have been discovered by tests commonly in use.   If Jankelson knew or ought to have known of its condition, his duty was to end the danger before he leased the walk for public use, and if he failed to do this himself, he continued liable till it was done by others.   He did not by his lease prohibit the use of the property until repairs had been made.    Whether he knew or ought to have known its true condition was a question for the jury.

The judgment of the Appellate Division dismissing the complaint imports a ruling that the plaintiff's case is deficient as a matter of law, and that ruling, since it involves a final determination of the action, we have jurisdiction to review.·   But even though his case has not failed as a matter of law, the Appellate Division may say that the weight of evidence is against him, and as to that its jurisdiction is exclusive.    It has not yet passed upon that question, for its decision that the judgment was erroneous as a matter of law was not accompanied by a statement that the judgment was affirmed upon the facts. To reinstate the verdict of the Trial Term would thus deprive the defendant of his right to a review of the facts, and to the privilege of a new trial if in the view of the Appellate Division the weight of evidence is in his favor. (*Wright* v. *Smith*, 209 N. Y. 249.)    Justice will, therefore, be done by remitting the case to the Appellate Division to the end that the facts may be considered.    If the verdict is approved as to the facts, the result will be an

affirmance; if it is disapproved the result will be a new trial. To avoid misapprehension, we ought to say that on appeals from judgments of the Appellate Division rendered since the amendment of section 1346 of the Code of Civil Procedure on September 1, 1914, this practice will be unnecessary. (*Middleton* v. *Whitridge*, 213 N. Y. 499.)

The judgment, so far as appealed from, should be reversed, and the case remitted to the Appellate Division for its consideration of the facts.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, HOGAN, MILLER and SEABURY, JJ., concur.

Judgment accordingly.