Susan M. Dadson, as Administratrix, etc., of Edward F. Dadson, Deceased, Respondent, *v.* William P. Dixon, Appellant.

Third Department, July 2, 1917.

Landlord and tenant — liability of landlord to employee of tenant for injuries caused by collapse of building — evidence insufficient to sustain theory of nuisance — when incidental defect in construction does not constitute nuisance per se — no implied warranty that property leased is fit for occupation.

Where in an action for the death of plaintiff's intestate, resulting from personal injuries caused by the collapse of a building owned by the defendant and rented to various tenants for manufacturing purposes, it appears that the collapse was caused by the overloading of the fourth floor which was used as a manufacturing plant by a tenant; that the deceased, an employee of a laundry company occupying the second floor, while engaged in his work was seriously injured; that said building had been used for over a half century as a manufacturing plant or plants, and during said period no suggestion had been made that there was any

defect in its construction or reason to anticipate an accident; that a mere incidental defect in the construction was subsequently discovered, but was not involved in the accident, and was not known to the defendant, it was reversible error to permit the jury to speculate upon the liability of the defendant upon the theory of nuisance.

The mere incidental defect in the construction of the building which had resulted in no harm for a period of more than fifty years cannot be called a nuisance *per se*.

Upon the demise of real estate there is no implied warranty that the property is fit for occupation or suitable for the use or purpose for which it is hired, and liability arises only where the dangerous condition is known or, with the exercise of reasonable care, ought to have been known.

A lessor of a building for private use is not liable for damages resulting to an employee of the tenant by reason of any defect in the leased premises.

KELLOGG, P. J., and COCHRANE, J., dissented.

APPEAL by the defendant, William P. Dixon, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 14th day of October, 1916, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 19th day of October, 1916, denying defendant's motion for a new trial made upon the minutes.

*Ainsworth, Carlisle & Sullivan [Charles B. Sullivan of counsel],* for the appellant.

*John P. Taylor [Thomas S. Fagan of counsel],* for the respondent.

WOODWARD, J.:

Plaintiff's intestate was injured by the collapse of a building owned by the defendant and rented to various tenants for manufacturing purposes, and died from the injuries about one month subsequent to the accident, which occurred on the 14th day of March, 1916. The plaintiff has a judgment for $4,220.06, and the defendant appeals from the judgment and from the order denying a motion for a new trial.

The building in question was located on Sixth street in the city of Troy, and was erected about the year 1865, and has been used since that time for manufacturing purposes, portions of it being leased to various tenants for their particular purposes. So far as the evidence discloses the defend-

ant never saw the building; he acquired it in the year 1899, and it appears to have been handled by local agents. At the time of the collapse the first and second floors of this building were occupied by the Adams Laundry Company, the plaintiff's intestate being an employee of this company, and being engaged at the time in working on the second floor, near the southwest corner. The third floor was unoccupied at the time, while the fourth floor was used as a manufacturing plant by the Empire Cereal Company. All parties agree that on the day of the accident the Empire Cereal Company had stored in the southwest corner of the fourth floor a large quantity of wheat — it had recently purchased a carload of grain, and this was piled in bags in the corner mentioned, and the evidence conclusively shows that the floor was thus heavily overloaded. Plaintiff's intestate was caught at his work and seriously injured. There appears to have been absolutely no premonitory indications of the collapse; there was no sinking or sagging of the floors, no bulging of the walls, so far as any one discovered, but suddenly the portion of the building over which the wheat was placed collapsed and crushed down through to the first floor, doing the injuries for which the plaintiff has recovered. The complaint appears to be predicated upon negligence and nuisance and the case went to the jury along the lines of the complaint.

The only possible foundation for the theory of nuisance, so far as we are able to discover, is an alleged structural defect, discovered after the accident by experts. This alleged defect is found in the fact that one of the girders supporting the second floor rested upon the lintel of a window without other support in the wall, while it is claimed that correct construction called for this girder to be embedded in the solid brick walls. This is pointed out as the weakest spot in the building, but there is no tangible evidence that the collapse started at this lintel, while the undisputed testimony is that the load which the southwest corner of the building was carrying was all out of proportion to the factor of safety involved in the construction of the fourth floor. In other words, the proof is that there was an adequate cause for the collapse in the weight and placing of the carload of wheat on the fourth floor, and in the absence of controlling evidence

that the collapse started at the alleged weak point on the first floor, there is no ground whatever for the verdict to rest on so far as it must depend upon nuisance. The evidence shows that this building, constructed back in 1865, has been in use all of these years as a manufacturing plant or plants, and so far as the record discloses, no one ever suggested that there was any defect in the construction of the building, or that there was any reason to anticipate this accident. There is undisputed evidence in the case that a printing company, which occupied the fourth floor just prior to the Empire Cereal Company, had carried a stock of goods of equal weight with that of the latter company, though probably better distributed, and the only reasonable construction of the evidence is that the building, apparently conforming to the requirements of reasonable safety under the standards prevailing in 1865, collapsed because of the misplacing of an overload by the Empire Cereal Company upon the fourth floor. Nothing is suggested which may fairly be construed as a nuisance in connection with this building; it had a potential carrying capacity which experience had demonstrated to be adequate for the purposes for which it was used, and there was nothing to give notice to any one that it was in a dangerous condition at the time the defendant rented it to the Adams Laundry Machinery Company, or to any of the other tenants, unless we are to hold that this alleged structural weakness, discovered only by experts after the accident had happened, and when more than half a century's experience attested its sufficiency, constituted a nuisance. When to this is added the fact that there is an adequate cause for the collapse, and that there is no evidence of probative force that the alleged structural defect was involved in the accident, the theory of nuisance obviously has no place in the case, and it was error to permit the jury to speculate upon the question.

The plaintiff relies upon the case of *Swords* v. *Edgar* (59 N. Y. 28) to support this judgment. That case is not, however, an authority upon which the plaintiff may rely. It was a close case, three of the judges dissenting, and it has been many times distinguished, limited and explained, and it is now recognized only as supporting an action where the element of a public use is involved. (*Junkermann* v. *Tilyou*

*Realty Company*, 213 N. Y. 404, 408, and authorities there cited.) And the court in the cited case say: " Liability does not arise unless the dangerous condition is known, or with the exercise of due care ought to have been known [*Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Timlin* v. *Standard Oil Co.*, 126 id. 514], and so the action has taken the form indifferently of one for nuisance or for negligence." The leading case, when read carefully, does not support the plaintiff's contention. The court, after calling attention to the fact that a pier is in the nature of a public highway, and that is is held out as being fit for the purposes of loading and discharging freight, etc., points out that the lessor was in a position to know the defect which existed in that tumbled-down dock, and holds that the lessor was liable to a third person coming upon the dock for a lawful purpose, and receiving injuries. The court say: " Again, it is said that the lessee controlled the use, and that the danger was due not to the condition of the pier, but to its use in that condition. This position would be of some strength, if there had been any customary mode of using the pier which did not bring into effect its dangerous condition. A lessor of premises, not *per se* a nuisance, but which become so only by the manner in which they are used by the lessee, is not liable therefor. [*Rich* v. *Basterfield*, 4 Man., Gr. & Scott (Common Bench Rep.) 783.] But that rule may not apply here. A pier so defective and insecure when it is leased, as that a subsequent injury, received in the proper use of it as if sound, is consequent upon its original condition, is, for the purposes of such an action as this, *per se* a nuisance. Its effect upon third parties is not the result of the manner of the use of it by the lessee. There is but one use to be made of it — as a place at which vessels may lay, and put off and take on their cargoes. For that use it is rented; and used therefor, it is the original insecure condition of it which is the cause of an injury." (*Swords* v. *Edgar*, 59 N. Y. 35.)

The undisputed evidence here is that this building was constructed more than half a century ago; that it has been continuously used for manufacturing purposes, and no suggestion is made that it was not in a fair state of repair at the time it was leased to the tenants who were in possession at

the time of the accident. A mere incidental defect in the construction, such as is pointed out, and which had resulted in no harm for a period of more than fifty years, could not be called a nuisance *per se;* it was not such a defect as would suggest danger to a reasonably prudent person, because all the experience was against it, and it is a rule of universal application that upon the demise of real estate there is no implied warranty that the property is fit for occupation, or suitable for the use or purpose for which it is hired (*Edwards* v. *N. Y. & H. R. R. Co.,* 98 N. Y. 245, 247), and liability arises only where the dangerous condition is known, or with the exercise of reasonable care ought to have been known, so that the case presents the element of disregard for the rights of others. (*Junkermann* v. *Tilyou Realty Company,* 213 N. Y. 404, 407, 408, and authorities there cited.) Here there is no evidence that the defendant knew, or that in the exercise of reasonable inspection of the same he should have known that there was the alleged structural defect. Moreover, the building was not for public use; it was a manufacturing building, where the tenants owed the duty to their employees of affording a reasonably safe place to work, and none of the cases go to the length of holding that the lessor is liable for damages resulting to an employee of a tenant who has merely leased the premises from the owner by reason of any defect in the leased premises. On the contrary, it is clearly recognized that the doctrine of *Swords* v. *Edgar* (*supra*) is confined to buildings and structures designed for public use, and has no application to a case of this kind. (*Junkermann* v. *Tilyou Realty Company, supra,* 408.)

The judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

LYON and SEWELL, JJ., concurred; LYON, J., being also of the opinion that on the question of the negligence of the defendant the verdict was against the weight of the evidence; KELLOGG, P. J., and COCHRANE, J., dissented and favored affirmance.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.