BESSIE MURRAY DAVIS, Respondent, *v.* SCHMITT BROTHERS, INCORPORATED, Appellant.

Second Department, January 20, 1922.

Landlord and tenant — action against owner or landlord for injuries received by fall caused by giving way of side railing on steps to house in possession of third persons, rent free, for purpose of conducting rummage sale — owner not liable.

The owner of a dwelling house, which he had purchased for the purpose of remodeling into a business building, who gave permission to third persons to use the house, temporarily, rent free, for the purpose of conducting a rummage sale, is not liable for injuries received by a person about to enter the house for the purpose of attending the sale, where it appears that while said person, with a large number of others, was going up the steps to the house the side railing to the steps gave way, for it cannot be said that reasonable care required the owner to foresee that the rummage sale would attract to the premises such a crowd of prospective purchasers as to dislodge and overthrow the railing, and, furthermore, it appeared from the evidence that to ordinary observation and examination the railing appeared to be safe; that it presented the appearance of an ordinary railing in a place of that character, and that there was nothing to indicate that it would not resist any pressure reasonably to be anticipated.

KELLY, J., dissents.

APPEAL by the defendant, Schmitt Brothers, Incorporated, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 11th day of June, 1921, upon the verdict of a jury for

$1,250, and also from an order entered in said clerk's office on the 29th day of June, 1921, denying defendant's motion for a new trial made upon the minutes.

*George F. Hickey* [*William Butler* with him on the brief], for the appellant.

*Adolph Ruger*, for the respondent.

JAYCOX, J.:

The facts essential to the decision of this case are very simple and are undisputed. The defendant, about a month before the accident which gave rise to this action, purchased a four-story brown stone dwelling house at 523 Madison avenue, borough of Manhattan, New York city. It was purchased for the purpose of remodeling it and converting it into a business building to be used by the defendant in its business as a dealer in furniture and antiques. Before the alterations were begun, the Visiting Nurses of Somerset Hills, a corporation, requested permission to use the permises for the purpose of conducting a " rummage sale " therein. The defendant granted this permission rent free, upon condition that a letter be written it relieving it from any liability. Such a letter was written and thereafter the Visiting Nurses of Somerset Hills entered into possession of the premises. On the morning that the sale was to begin, March 10, 1920, the plaintiff with a number of others was on the stairway leading from the sidewalk to the front door, about to enter the premises for the purpose of attending the sale, when the entire railing on the right-hand side of the stairway gave way and the plaintiff and some others were precipitated into the areaway of the adjoining premises. The plaintiff received certain injuries for which the jury has awarded her a verdict of $1,250.

The case was submitted to the jury upon the theory that the defendant's liability was unaffected by the fact that the premises were occupied by the Visiting Nurses Association. This position was apparently based on *Junkermann* v. *Tilyou Realty Co.* (213 N. Y. 404); *Fox* v. *Buffalo Park* (21 App. Div. 321; affd., 163 N. Y. 559); *Camp* v. *Wood* (76 id. 92); *Swords* v. *Edgar* (59 id. 28); *Barrett* v. *Lake Ontario Beach Imp. Co.* (174 id. 310), and *Lusk* v. *Peck* (132 App. Div. 426). In

those cases, however, two elements were present which are lacking in the present case. The lessor in all of those cases was to profit directly or indirectly from the use of the premises by the lessee. In *Junkermann* v. *Tilyou Realty Co.* (*supra*) the court, by CARDOZO, J., said: " He was himself to profit from the use which he had in view, both as a landlord in receipt of rent, and as a stockholder interested in the company which was to maintain the park. In this situation, if there existed when he made his lease a dangerous condition that was known to him, or by reasonable inspection might have been known, the law charges him with liability." This, I think, indicates that profit to the owner is essential to a recovery against him when the premises are in the possession of another. This factor was present in all of the above-cited cases. The other element present in those cases and absent here is the letting for a " public use." It is true that in this case the public were invited to purchase at the rummage sale and for that purpose to visit the premises. But that is not the kind of public use upon which the cases above cited are based. In the *Junkermann* case the premises are described as an " amusement park," and at the time of the accident complained of a " baby parade " was in progress. In the course of the opinion it was said: ", We may say that those who enter a structure designed for public amusement are there at the invitation, not only of the lessee who maintains it, but also of the lessor who has leased it for that purpose, and that the latter's liability is merely an instance of the general rule which charges an owner of property with a duty toward those whom he invites upon it. (*Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Swords* v. *Edgar, supra.*) We may say more simply, and perhaps more wisely, rejecting the fiction of invitation, that the nature of the use itself creates the duty, and that an owner is just as much bound to repair a structure that endangers travelers on a walk in an amusement park as he is to repair a structure that endangers travelers on a highway. Whatever the underlying principle that explains the rule, the rule itself is settled. The owner of such a park must use all reasonable care to make its structures safe before he leases it for his profit." Public use, referred to in all those cases, is of a similar character, namely, a

grand stand at a race track in *Fox* v. *Buffalo Park* (*supra*); a dance hall in an inn in *Camp* v. *Wood* (*supra*); a pier in *Swords* v. *Edgar* (*supra*); a public toboggan slide in *Barrett* v. *Lake Ontario Beach Imp. Co.* (*supra*) and in *Lusk* v. *Peck* (*supra*) a grand stand upon an athletic field. The distinction between those cases and this is that in those cases the public were invited upon the premises to use the premises, but in this case the public were invited upon the premises to buy goods. In one instance the use of the premises is the primary purpose of all who enter, while in the other instance the use of the premises is only incidental. In all the cases cited above the premises were built for the express purpose for which they were being used, and the injured person in nearly all of them had paid for the use of them. In all of those cases practically a contractual relation existed between plaintiff and defendant. The defendant prepared premises for public use, they were unfit for that use and the plaintiff, having paid for that use, was injured while upon the premises. The situation is unaffected by the intermediate hiring if the premises were unfit for public use when leased. Treating this case in the same manner, we have a house not built for any public purpose, but for a private dwelling; application is made to the owner to use this house, not for any amusement purpose by which people entering the premises will be required to pay for the use thereof, but for the sale of goods; the owner exacts no rent and in effect says to take the premises as they are, you are welcome. For accidents occurring thereon, under these circumstances, the owner is not liable in reason or within the doctrine of the adjudicated cases. The owner of premises which are constructed and let for a public use, in the sense of an amusement park, grand stand or dance hall, anticipates the attendance of a large number of people, who are usually all present at one time. The success of the premises as a financial enterprise depends upon such attendance. The owner of a dwelling house, however, who lets it for the purpose of selling goods has no reason to anticipate the attendance of a large number of people at one time.

Even if, under the circumstances disclosed here, a duty rests upon the owner, the failure to perform which will render him liable in damages, that duty was only reasonable care. I

think it cannot be said that reasonable care required the owner to foresee that a rummage sale (a private sale of miscellaneous second-hand articles) would attract to these premises such a crowd of prospective purchasers as to dislodge and overthrow this railing. There was nothing about this proposition to lead the ordinary citizen to foresee that any considerable amount of pressure would be exerted against this railing. The defendant was not required to furnish a railing that could not be dislodged, only to exercise reasonable care to see that the railing provided was reasonably safe. The only testimony furnished by the plaintiff in regard to the condition of this railing was given by a man whose occupation was taking care of furnaces and doing odd jobs about the neighborhood, who testified that he had examined this railing; that it was loose and that the cement had been washed out at the bottom of the posts. This testimony was opposed by that of a large number of witnesses who testified that the railing was firm and secure. Without trenching upon the right of the jury to pass upon controverted questions of fact, I think we may safely say that to ordinary observation and examination this railing appeared safe; that it presented the appearance of an ordinary railing in a place of that character and that there was nothing to indicate that it would not resist any pressure reasonably to be anticipated. Reasonable prudence and foresight would not require more than this. The evidence does not show that the defendant failed in its duty of reasonable care.

The judgment and order should be reversed, with costs, both upon the law and upon the facts, the finding of negligence implied in the verdict reversed, and the complaint dismissed, with costs.

MANNING, J., concurs; BLACKMAR, P. J., and RICH, J., concur on the last ground stated in the opinion; KELLY, J., dissents and votes to affirm.

Judgment and order reversed, with costs, both upon the law and facts; the finding of negligence implied in the verdict reversed, and the complaint dismissed, with costs. Settle order on notice before Mr. Justice JAYCOX.