ROBERTO COLE ET AL., Plaintiffs, Appellants and Appellees, *v.* THE ESCAMBRÓN DEVELOPMENT COMPANY, INC., Defendant, Appellee and Appellant and FRANCISCO QUIÑONES, ETC., Defendants and Appellees. JUAN MERCADO ET AL., Plaintiffs, Appellants, Appellees, *v.* THE SAME, Defendant, Appellee and Appellant and THE SAME, Defendants and Appellees. LUIS ALBELO ET AL., Plaintiffs, Appellants and Appellees, *v.* THE SAME, Defendant, Appellee and Appellant, and THE SAME, Defendants and Appellees. ALFONSO GONZÁLEZ CARBO ET AL., Plaintiffs, Appellants and Appellees, *v.* THE SAME, Defendant, Appellee and Appellant and THE SAME, Defendants and Appellees. ROBERT DENTON ET UX., Plaintiffs and Appellees *v.* FRANCISCO QUIÑONES ET AL., Defendants; THE ESCAMBRÓN DEVELOPMENT COMPANY, INC., Appellant. ANGELINA RIVERA ÁLVAREZ ET AL., Plaintiffs and Appellees, *v.* THE ESCAMBRÓN BEACH CLUB ET AL., Defendants; THE ESCAMBRÓN DEVELOPMENT COMPANY, INC., Appellant.

Nos. 10227, 10246–47. Argued December 13, 1950.—Decided May 31, 1952.

478

*E. Martínez Rivera* for plaintiffs. *Francis e Ydrach* for defendant. *Emilio de Aldrey* for codefendants.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

These appeals involve six suits brought by several defendants against Francisco Quiñones and his insurer, United States Casualty Company, and The Escambrón Development Company, Inc. The facts which gave rise to these suits may be summarized as follows:

On February 23, 1947 a children's dance was being held at the Escambrón Beach Club, a recreation center of San Juan. Around five o'clock in the afternoon, while the party was going on, part of the floor of the dancing hall, which was formed by a terraplein or concrete platform supported by concrete pilings or beams, collapsed. At that moment, some of the persons attending the party and who had paid for their admission were thrown and fell into the water, suffering physical injuries and losing personal belongings.

At the time of the occurrence defendant Francisco Quiñones was sublessee [1] of The Escambrón Development Company, Inc. He had subleased the buildings and recreational facilities of the Escambrón Beach Club, operating the latter as a business. The Escambrón Development Company, Inc., was the owner of said premises it being in turn lessee [2] of the People of Puerto Rico who owned the lands in which said buildings were located. The United States Casualty Company, Francisco Quiñones' insurer, had, at said time, covered the liability for damages in which he might incur by injuries or deaths caused by accidents to third persons in his business.

The complaints charged defendant Francisco Quiñones, as lessee and owner of the aforesaid business, and The Escambrón Development Company, Inc., as lessor and owner of the premises, with joint and/or several negligence which consisted in keeping open to the public, and permitting its use, the dancing hall of the Escambrón Beach Club, despite the fact that the columns and beams which supported the platform of the floor were beaten and washed continuously

---

[1] The sublease contract—of October 14, 1946—fixed a term under Clause number two, of four years to be counted from October 16, 1946 which could be extended at the sublessee's option for two more years, on written notice to the sublessor three months in advance.

[2] The original lease of the land was executed between the People of Puerto Rico and Félix Benítez Rexach on December 15, 1931, having The Escambrón Development Company, Inc., acquired said right by assignment made by the original lessee on February 17, 1940.

by the sea waves without taking jointly or separately those precautions and measures of sound prudence in order to insure the public's safety, and without observing the due diligence and care required by the nature of the building in order to keep it in a proper state of use so as to avoid a dangerous and unsafe condition.

Quiñones and his insurer, United States Casualty Company, as well as The Escambrón Development Company, Inc., refused to admit any liability whatsoever for the accident in their separate answers in each one of the actions filed.

The position adopted by Quiñones and his insurer as to the negligence imputed on Quiñones was, essentially, that the platform collapsed without any fault whatsoever on Quiñones' part, for reasons and grounds entirely extraneous and unknown to him, without said platform denoting offhand that there was a defect in its construction; that Quiñones always believed that it had been built by the sublessor "with strength and endurance having in mind the place where it was located"; that at the time of the accident the dancing hall was dedicated "to the usual and common purpose for which it had been intended by him as lessee as well as by its lessors who previously operated said premises"; that had any defects in construction existed in said platform "they were hidden in such a way that they could in nowise be noticed by codefendant Francisco Quiñones" and that, consequently, if there was negligence or carelessness in connection with the construction or care of said platform, it was on the part of the lessor.

The position adopted by The Escambrón Development Company, Inc., as to that particular, was, in essence, that the accident was not due in any way to negligence on its part, since said corporation "was never in the material possession of the premises which formed the Escambrón Beach Club nor were they aware in any way of its condi-

tion or defects, if any, nor did it ever operate, as manager, said premises nor any part thereof"; that from June 18, 1936 until June 30, 1946 said buildings were in the material possession of Mr. Miguel Vidal and a corporation known as The Escambrón Beach Club, Inc.; that after June 30, 1946 The Escambrón Development Company, Inc., instituted an unlawful detainer proceeding against The Escambrón Beach Club, Inc.; said suit was compromised and The Escambrón Beach Club, Inc., directly delivered to Francisco Quiñones the material possession of the premises with whom The Escambrón Development Company, Inc., executed a sublease contract on October 14, 1946; that in order to insure the proper inspection and the repairs of the main building of the Escambrón Beach Club so as to render it suitable for its intended use, Clause eighteen was expressly inserted in the referred sublease contract, which textually copied reads:

"EIGHTEEN: It is agreed and stipulated that the sublessee binds himself to keep the subleased property in good condition and to maintain it and preserve it with the diligence of a good father of a family. It is made clear and understood that upon receiving the property herein subleased the sublessee shall proceed to put the main building described in the FIRST paragraph of this contract under letter (e) in good condition, being it understood and stipulated that the sublessee shall take upon himself the cost of the repairs up to FOUR THOUSAND DOLLARS ($4,000) it being understood and made clear that any amount or amounts necessary for such purpose exceeding FOUR THOUSAND DOLLARS ($4,000) shall be paid by the sublessor, it being further understood that after said repairs are made, which shall be made by the sublessee within a period of sixty days, the sublessor will take upon himself the repair and conservation of said building as it is agreed. It is also made clear that with regard to the other property subleased, including the rest of the premises, the sublessee knows the condition in which they are on this date, that he accepts them just as they are, and binds himself to repair them and thus repaired to keep them in a good condition and preserve them with the diligence of a good father of a family."

The issue being thus joined,[3] a trial was held in the lower court, in which three of the cases were jointly heard. The others were submitted as to the question of negligence, on the evidence introduced in said trial, evidence being adduced, however, in each of them in connection with the damages.

The lower court sustained each and every one of the complaints against The Escambrón Development Company, Inc., awarding to the defendants in each case different amounts as damages for physical injury, mental suffering, and loss of personal belongings. It dismissed each and every one of the complaints as to Francisco Quiñones and his insurer United States Casualty Company.

The lower court reached this conclusion after considering that clause eighteen of the contract, should be construed "by its context and by the circumstances which preceded its execution in the sense that it imposed on the [sub] lessee the duty to undertake any repairs, and pay therefor, for the necessary embellishment of the dancing hall, such as paint, decoration, fixing of the windows, doors, and entrance; and that in the amount of $4,000 stipulated in said clause for that purpose "the parties did not include or contemplate the reconstruction of part of the building or the repairs of its foundation or concrete beams," by which reason it was incumbent on The Escambrón Development Company, Inc., to reconstruct or repair said foundation and concrete beams. The lower court also reached the conclusion that the pilings and beams of the platform which collapsed were in an advanced state of deterioration on the day of the accident and that said condition "was present four years prior to the execution of the [sub] lease," and that "Quiñones was unaware of the state of deterioration of these beams and

---

[3] We need not mention the position assumed by codefendants as to the accident itself and the injuries suffered, since the present actions are confined to the question of liability due to negligence, which, as we have seen, Quiñones, as well as The Escambrón Development Company, Inc., denied.

neither could he have determined said condition by an ordinary and reasonable inspection."

Codefendant The Escambrón Development Company, Inc., appealed from each and every one of the six judgments rendered against it. Plaintiffs also appealed from four of these judgments, insofar as their complaints against Francisco Quiñones and his insurer [4] were dismissed.

Codefendant The Escambrón Development Company, Inc., as appellant, alleges in its brief filed in this Court—to be used in all the appeals—that the lower court committed six errors: (1) in holding that it was the duty of said defendant to reconstruct the base of the building or to repair said base and concrete beams; (2) in holding that Francisco Quiñones was unaware of the condition of the beams which collapsed and that he could not have determined it by an ordinary and reasonable inspection; (3) in holding that under clause eighteen of the sublease Quiñones was bound merely to make the necessary repairs for the embellishment of the dancing hall such as paint, decoration, fixing of windows, doors and the marquee, and that the amount of $4,000 mentioned in said clause had been allotted to said purposes without including the reconstruction of the building or repair of its base and concrete beams; (4) in allowing Rafael Rivera Zayas, attorney-at-law, to testify on conversations having taken place in connection with the drafting of the sublease; (5) in holding that clause eighteen of the referred contract must be construed by its context and by the circumstances and arguments preceding its execution; and (6) in granting the complaints against said defendant The Escambrón Development Company, Inc., since the only party responsible to plaintiffs is sublessee Francisco Quiñones.

Likewise, the plaintiffs who appealed in four of the six suits filed, alleged that the lower court committed the follow-

---

[4] In two of the suits plaintiff did not appeal. The appeals taken to this Court under numbers 10,246 and 10,247, were instituted in said suits by codefendant The Escambrón Development Company, Inc.

ing errors: (1) in holding that defendant Francisco Quiño-nes had no knowledge of the bad conditions of the floor; (2) in holding that by an ordinary inspection, Francisco Quiñones could not have discovered the bad conditions of the floor; (3) in exonerating Francisco Quiñones and his insurer the United States Casualty Company from any liability whatsoever.

On the other hand, codefendant appellee Francisco Quiñones contends, in brief, that The Escambrón Development Company, Inc., sublessor, is totally liable since the condition of deterioration of the beams and piles which supported the platform that collapsed, existed a long time before the building where the dancing hall was located was delivered to him under the sublease contract; that upon assuming, Quiñones, as sublessee, the obligation to repair said building, he did it within certain limits, without said repairs including the reconstruction of the platform or its base, and besides, because Quiñones was not aware of the condition of the beams which supported said platform without being able to determine by an ordinary and reasonable inspection, that such was the condition.

 In order to reduce the legal issue to its due proportion, we shall consider, in the first place, and without following the order of the assignments of error, the liability of codefendant appellant The Escambrón Development Company, Inc.

Pursuant to § 1444 of the Civil Code (1930 ed.), the lessor is bound "to deliver to the lessee the thing which is the object of the contract." This obligation, according to Scaevola, requires the lessor to deliver the thing leased "in such a condition as to permit the lessee to enjoy it as he intended." 24 Scaevola, Civil Code, First Part, 513. "If, at the time of the lease of the estate the condition of the same was not mentioned, the law presumes that the lessee received

it in good condition, unless there be proof to the contrary." Section 1452, Civil Code (1930 ed.).

According to the facts which the lower court considered proved—amply supported by the evidence—the piles and beams which collapsed on the day of the accident were in an advanced state of deterioration and this condition dated since four years before the execution of the lease contract." The entire evidence in the record as to the state of deterioration of that part of the main building subleased to Quiñones, and which was not controverted, discloses beyond any doubt that the platform was very near to collapse when Quiñones came into its possession under the contract with codefendant appellant.

Existing such ruinous condition in the dancing hall of the Escambrón Beach Club at the time of the execution of the contract, the danger and unsafety for the persons who attended the dance which as part of his business Quiñones offered to the public, was evident. We reach the inescapable conclusion that the main building of the Escambrón Beach Club where the dancing room was located was not, on the day mentioned, fit for the use intended and for which it was leased to Quiñones.

Section 1807 provides that "the owner of a building is liable for the damages which may result from the collapse of the whole or a part thereof, if it should occur through the absence of the necessary repairs." The condition of deterioration of the beams and piles which supported the platform of the dancing hall, and which at the time of the execution of the contract was a menace because of lack of the repairs necessary to guarantee adequate support to said platform, caused four months later and for the same reasons of want of repair, the collapse of the platform and the injuries to plaintiffs. We need not consider here, in view of the injuries suffered by third persons as the result of the collapse of the cited platform, whether under clause eighteen

of the contract Quiñones was bound with The Escambrón Development Company, Inc., to repair the main building of the Escambrón Beach Club in the limited way to which the lower court referred in its judgment, as Quiñones contends, or without limitations, as The Escambrón Development Company, Inc., alleges.

For the purpose of the liability of the sublessor towards third persons who suffered injuries due to the ruinous condition of the platform of the dancing hall, the construction given to the referred clause as to whether Quiñones assumed partly or fully the contractual obligation of repairing the main building is immaterial. In either case, The Escambrón Development Company, Inc., is not relieved of its liability regarding third persons. At most, if its contention prevails in the sense that Quiñones assumed the obligation under the aforesaid clause eighteen, of making all the necessary repairs within the terms and conditions stipulated therein, the sublessor would be entitled to obtain payment from Quiñones for any compensation as damages which it would have to pay to plaintiffs. On this particular Manresa in his *Comentarios al Código Civil Español*, states:

"May the owner who, pursuant to the obligation imposed by section 1.907 [1807 of our Civil Code, 1930 ed.], pays for the damages caused by the collapse of a building belonging to him, recover from another person what he might have paid therefor? The section we are commenting does not say so, nor do any of the sections in the present chapter contain any provision thereon, but this silence does not imply the absolute absence of a right of action for said recovery.

"Actually, section 1.907 [1807, Civil Code, 1930 ed.] must be read together with the third paragraph of section 1.559 [1449, Civil Code, 1930 ed.] and with the general and very lengthy provision of section 1.902 [1802, Civil Code, 1930 ed.]. According to the first section, the owner may recover from the lessee, if the property is leased, and the latter fails to notify the former, as early as possible, of the exact repairs needed to keep the property fit for the use to which it was destined; for

in such case the lessee shall be liable for the damages that might be caused to the owner for the lack of notice and its consequences among which, necessarily and doubtless, must be included the compensation that he might have to pay to the prejudiced party for the damages resulting from the collapse of the whole or a part of the leased building. It so appears from the provision contained in the section cited, which provision conforms in this particular with the provision of *Ley* 7, tit. VIII of *Partida* 5. It appears, therefore, that the absence of notice or the ignorance on the part of the owner as to the need of repairs, does not exempt him from the obligation to compensate the damages caused, but entitles him to recover from the lessee who failed to give the required notice and since his failure to give notice or his ignorance of the need of repairs caused thereby is no ground for exemption, he cannot allege said ignorance as an exception, nor must he, therefore, prove it in the action brought by the aggrieved party.

"Besides, if the lack of repairs which caused the collapse of the whole or a part of the building depended, not on the will of the owner, but of a third party, as for example, if said repairs were not made with due promptness, or if they were neglected due to the fault of the person to whom they were opportunely entrusted, giving rise for that reason to the collapse; in said case, as in all other similar or analogous cases, he may recover from the person who caused the damage pursuant to the principle provided in section 1.902." [1802, Civil Code, 1930 ed.].

But it would never be exonerated of its liability to third persons, for as regards the latter's rights, contractual relations between codefendants are not in point.

The sublessor can not plead as a defense that prior to the execution of the aforesaid contract it had not been in the material possession of the property, because it was leased to another person, and therefore, it was not aware of the condition of deterioration in which a part thereof was. It was bound to deliver it to the sublessee in such a condition as to serve the purpose for which it was intended and in such safe conditions as to allow him to enjoy it as was his

intention, which was the same for which it was built and used by the sublessee.

The decisions of this Court in *Roa* v. *Puig et al.*, 19 P.R.R. 366; *Pérez* v. *Gandía*, 32 P.R.R. 517; *Miranda* v. *Méndez*, 50 P.R.R. 810; *Torres* v. *Fernández*, 56 P.R.R. 459; *Ortiz* v. *McCormick Steamship Co.*, 57 P.R.R. 551; *Vázquez* v. *Antuñano*, 61 P.R.R. 745; *Arroyo* v. *Caldas*, 68 P.R.R. 639; and *Ramírez* v. *Hotel Condado*, 68 P.R.R. 880, do not overrule the conclusion reached herein. None of these cases involved the ruinous condition of a property at the time of the contract. And in none of them the owner of the property raised the defense of being free of liability by virtue of a clause to the contrary in the lease contract. In all of them with the exception of *Ortiz* v. *McCormick Steamship Co.*, *supra*, in which the sublessor filed a complaint against the sublessee for recovery of rent and the latter filed a counterclaim for damages, the owner or owners of the property leased were the only ones sued. Consequently, we dismiss the errors assigned by codefendant appellant in connection with the contract and its clause eighteen, as well as with the construction given by the lower court in the light of the conversations which preceded the execution of said contract. We equally dismiss the error which alleges that the only party liable to plaintiffs is sublessee Francisco Quiñones. However, we must immediately consider the second assignment made by said codefendant appellant, which is equivalent to the first and second assignments of plaintiffs appellants, in the sense that the lower court erred in holding that Francisco Quiñones was not aware of the condition of the beams and that he could not have determined it by an ordinary and reasonable inspection.

The uncontrovertible evidence showed that at the time the contract between Quiñones and The Escambrón Development Company, Inc., was executed, and the former took possession of the buildings there was a crack in the

floor or platform of the dancing room, which Quiñones was able to see, measuring about 30 feet long, reaching in some places ¾ inches wide, located more or less at the point where the floor later collapsed. The crack, according to Quiñones' own testimony, was about ½ inch deep, and he had it refilled with terrazzo. He also stated that he never examined the floor underneath nor does he know whether it was examined.

We find no ground to alter the conclusion of the lower court to the effect that Quiñones was unaware of the condition of the beams. However, we can not hold the same as to its conclusion that he was unable to determine the condition of deterioration and ruin in which they were by means of an ordinary and reasonable inspection. The appearance of a crack 30 inches long in the concrete platform which formed the dancing hall and which was constructed, partly, above the ocean, was sign enough that Quiñones had to investigate the condition of the piles and the beams which supported the floor, especially knowing that some piles were embedded in the ocean, and that the place of the crack, where later the floor collapsed, corresponded to the location of those beams. A reasonable and prudent person ought to have thought of determining, by examining piles and beams, the cause of the crack, which was a warning that something was wrong in said platform.

The condition of the beams and columns of the collapsed floor, according to the description made by engineer J. M. Canals—witness of codefendant appellee Quiñones—and who made an inspection after the collapse, was such that the foundation was floating; the concrete around the columns had been worn away by the corrosial action of the waves; columns of $10 \times 10$ had been worn out or "eaten" away, leaving a circumference of only 2 or 3 inches; the concrete in the floor had the rods exposed; the sea wave action exposed the lower part of the footing of several columns, pushing

them from their foundation into the sea; a column had its base totally in the air and another was fully cut by the corrosive action of the sand. On cross-examination and when asked whether a person would be able to notice the condition of said beams or piles which supported the platform of the dancing hall, this witness, after testifying on the inspection he made, answered as follows:

"Q. Would a person, a foreman who has been in charge of works of that nature, would he notice those things by merely looking at them?

"A. He would have had to notice them .because they have to attract the attention of any person who goes under there.

"Q. In your opinion, if a person with experience in construction work whoever he may be, makes an inspection underneath the floor of the Ballroom of the Nations around the beginning of October, 1946, would he have noticed that ruinous condition?

"A. Three years before that date he would have noticed it. He had to notice it."

The fact that Quiñones did not inspect underneath the platform,[5] as he testified, does not relieve him of his liability to the plaintiffs. The extension of the crack in the

---

[5] Codefendant The Escambrón Development Company, Inc., introduced the testimony of Amaury Díaz Benítez to show that at Quiñones' request he made an inspection three or four days after Quiñones leased The Escambrón Beach Club and that he gave him the pertinent advice as to the roof, walls, paint, marquee and the floor; that there was a crack of 42 feet by 9 inches long in the floor according to his measurements; that "the crack formed a small lump which at its highest point was about 3 inches above the level of the rest of the floor"; that he told Quiñones that said crack had to be investigated; that he investigated it together with his builder, Mr. Grafal; that they went underneath the platform and found the concrete beams completely split along their longitudinal axis, the rods exposed and rusted; some of the columns which supported the beams were in the air, the rail 6 or 8 inches beneath the sand and at the other end the beam, besides being split along its longitudinal axis, was also vertically cracked.

Said witness testified that he reported it to Quiñones warning him that it was dangerous to continue doing what he wanted to do, "to hop off the concrete and put some terrazzo to cover it again." Evidently the lower court did not give credit to this testimony and we are not depending on it for the conclusion we reached in these appeals.

floor of the dancing room and the other circumstances already pointed out ought to have made Quiñones take reasonable care to determine the origin of the rift. Failure to do so is negligence on his part and he is liable to plaintiffs together with codefendant The Escambrón Development Company, Inc., because of said negligence.

Plaintiffs' right to recover from both codefendants or from any of them can not be defeated by the obligations contracted between the parties. Although The Escambrón Development Company, Inc., is liable for letting the dancing hall become ruinous for lack of repairs, Quiñones, by his own negligence in the operation of his business in failing to exercise the due care and reasonable zeal so as to determine the cause of the defect—visible—in the floor, incurred in liability with the public, whom he invited and who attended his business. Quiñones' liability to plaintiffs arises from the provisions of § 1802 of the Civil Code, 1930 ed., and not from the contract. To that effect see *Vázquez* v. *Antuñano, supra*. When an injury is the result of the combined negligence of several persons, said persons are jointly and severally liable to the aggrieved party, the latter being entitled to file an action against one or all who caused the damage. *Cubano* v. *Jiménez et al.*, 32 P.R.R. 155; *González* v. *White Star Bus Line, Inc.*, 53 P.R.R. 628; *Rivera* v. *Great Am. Indemnity Co.*, 70 P.R.R. 787; *García* v. *Government of the Capital*, 72 P.R.R. 133.

*Folkman* v. *Lauer*, 91 Atl. 218 (Pa., 1914) ; *Junkermann* v. *Tilyou Realty Co.*, 108 N. E. 190 (N. Y., 1915) and *Oxford* v. *Leathe*, 43 N. E. 92 (Mass., 1896), cited by codefendants appellees, do not govern this case under the facts attending herein and the legal rules of our Civil Code.

For the foregoing reasons we must conclude that the second assignment of plaintiff appellants—and second also of codefendant appellant—was committed; but, as to the latter, it is not relieved of its liability to plaintiffs appel-

lants. Consequently, the judgments in the four actions included in this appeal, No. 10,227, in which plaintiffs appear as appellants, will be modified in the sense of sustaining also the complaints against codefendant Francisco Quiñones and United States Casualty Company, with equal pronouncement of costs and attorney's fees, and as thus modified they will be affirmed; and the judgments in the suits filed in this Court under Nos. 10,246 and 10,247, in which plaintiffs did not appeal, will be affirmed.