LUCIA COULSON, Respondent, *against* ELIOT B. WHITING Appellant.

(Decided May 22d, 1884.)

In reviewing, upon appeal from a judgment, a ruling made at the trial upon an offer of proof, such offer is not to be treated with any special favor, nor to be expanded so as to embrace matters not within the issues raised by the pleadings.

In an action for rent upon a lease, under an answer which alleges that defects in the sewerage of the demised premises "were wrongfully and fraudulently concealed from the defendant by the plaintiff at the time of making said lease," but fails to state the facts that constituted the fraud, proof of such facts is not admissible.

Coulson *v.* Whiting.

As a general rule, a lessor is not bound to disclose to an intending lessee any defects in the structure or condition of the premises that make them unfit for habitation. And unless the circumstances show a different understanding between the parties, a statement by a landlord that the plumbing is in good order is to be regarded merely as the expression of an opinion, and not as the assertion of a fact.

A lessee is not entitled to abandon the demised premises as untenantable, under the act of 1860 (L. 1860 c. 345), merely because, during the term, he finds the plumbing in them to be in such a condition that it impairs his comfort or injures his health.

APPEAL from a judgment of the General Term of the City Court of New York affirming a judgment of that court entered upon the verdict of a jury rendered by direction of the court and an order denying a motion for a new trial.

The facts are stated in the opinion.

*Francis C. Barlow*, for appellant.

*Porter & Kilvert*, for respondent.

VAN HOESEN, J.—We were urged by the counsel for the appellant to treat this appeal with great indulgence, because the learned justice before whom the action was tried did not call attention to the insufficiency of the answer before he directed a verdict for the plaintiff. An offer to prove was entertained by the justice, and therefore the counsel contends that if a good defense could have been established, we are at liberty to assume that it would have been established, and upon that assumption to reverse the judgment, though the answer sets up no bar to the plaintiff's right to a recovery.

I do not so understand the duty of an appellate court in reviewing a judgment. There are few judges of experience that will receive an offer of proof; but when one is entertained we are to pass upon it as we pass upon any other proceeding taken at a trial, and to construe it according to its language, and by the light of the circumstances under which it was made. It is not to be treated with any special

favor, nor to be expanded so as to embrace matters that are not within the issues raised by the pleadings.

Let us see what the offer was. It was "to prove the substance of the answer in regard to the question of sewerage; the substance and all the particulars and matters contained in the answer." What was the answer that the defendant said he could prove? He offered to prove his answer, and not a defense not pleaded; and, therefore, the first question that arises is, Did the answer set up a good defense?

It alleges that "the sewerage or drainage *is* defective, and that offensive and noxious vapors and odors arise through the pipes, which have endangered the life of the defendant, and rendered the house unfit for habitation; and that the said defects in the sewerage were wrongfully and fraudulently concealed from the defendant by the plaintiff at the time of making said lease." I will not say that these allegations are made in bad faith, but they are suspicious; first, because the plaintiff resides in England, and the lease was executed in New York on her behalf by an attorney; and, secondly, because the averment is not that the drainage was defective at the time of the making of the lease, but only that it was defective at the time the answer was verified. The present tense is used when the defects of the sewerage are mentioned, though the perfect tense is used in speaking of the effects of the alleged vapors and odors. It would not be unfair to infer that there was some reason for omitting to allege what the condition of the house was at the time of the making of the lease (*Bloomer* v. *Merrill*, 1 Daly 485). But it may be said that the pleader intended to say that the defects complained of existed prior to the execution of the lease, because it is said that the plaintiff fraudulently concealed them. I shall treat the answer, therefore, as if it alleged that the defects existed at the time the lease was made.

It will be observed that the defendant uses the words "fraudulently concealed," but fails to state the facts that made the fraud. What, in the defendant's judgment,

amounts to a fraudulent concealment? What did the plaintiff know respecting the condition of the plumbing? What did she do to conceal the alleged defects? What was her intent in doing what she did? How was the defendant misled by her machinations? These facts were essential to the establishment of a defense,.and yet they were not pleaded, and, therefore, could not be proved (*McMurray* v. *Gifford*, 5 How. Pr. 14; *Lefler* v. *Field*, 52 N. Y. 621; *Dubois* v. *Hermance*, 56 N. Y. 673).

There is such a thing as a neglect to perform the duty of disclosure where such a duty exists, and that is a case of passive concealment. But there are few instances in which it is the duty of the landlord or of a vendor to disclose to the intending tenant or the intending purchaser any defect in the subject of the negotiation. Where a tenement has recently been occupied by a person that had an infectious disease, it has been held that the landlord was answerable in damages if he re-let the premises to a stranger without communicating to him the facts within his knowledge respecting the sickness of the former occupant. This is an exception to the rule, and is not intended to relax the principle that a landlord is not bound to disclose any defects in the structure or condition of the premises that make them unfit for habitation. A defect in the plumbing is like a defect in the flues or in the heating apparatus. These imperfections can not be discovered, perhaps, by any examination that the intending tenant can be expected to make; but yet it has never been held that the landlord is bound, under the penalty of fraud, to disclose such defects, even though he be aware of them. The tenant is as much bound to make ordinary repairs to the plumbing as he is to make any other ordinary repairs, in a house that he imprudently leases whilst it is out of order.

There is another kind of concealment called "active concealment," and this is where one party does something to prevent the other from learning a material fact; as, by using contrivances to hide defects, or where he contributes to produce, by some overt act, an erroneous belief by the

other party of an essential fact, or where he tells a part only of the truth and withholds the remainder, which, if told, would entirely change the effect of what he has dis-closed; these are acts in the nature of "aggressive deceit," but they fall under the head of active concealment. Of which kind of concealment did the answer mean to accuse the plaintiff? No man can say. It may be that the pleader had no very clear idea in his mind, and that he shared the belief—only too common—that mephitic vapors are so injurious to the human constitution that rent need not be paid where a tenant can show that he has detected the smell of sewer gas in the demised premises. This is an error. It is a fact known to all who dwell in New York that where a connection is made with a sewer, it is certain that more or less of the exhalations from the sewer will ascend into the house. The great effort of the plumbers has been to devise some plan by which to prevent the ascent of these vapors; but it may well be doubted if any one of them ever succeeded, or ever will succeed. If they should prove successful, only a part of the difficulty would be overcome, for where liquid polluted with the filth of the human body is sent down the pipes to the sewer, a part will inevitably adhere to the interior surface of the conduits, and naturally produce offensive smells and gases. It is of this, as well as of vapors from the sewers, that people com-plain, and in all probability there is not a house in the city of New York that is not occasionally visited by unpleasant odors from the pipes leading to the sewers. Some houses are much worse than others, but the fact is incontestible that a house that is entirely free from what is called sewer gas must be one that has no pipes in it for the discharge of the refuse of the household. People hire houses with a knowl-edge of all this, and then seek to avail themselves of the presence of sewer gas as a defense to the payment of rent. An unpleasant odor at times is a necessary evil in a house with sewer connections. The landlord is dependent on the good faith and the skill of the plumber, the major part of whose work is not open to inspection, and nothing could be

more unjust than to hold the landlord liable for secret defects for which the plumber is to blame, if there be blame at all. The mysteries of the pipes are no more open to the landlord than to the house hunter, and unless circumstances show a different understanding between the parties, a statement by a landlord that the plumbing is in good order is to be regarded merely as the expression of an opinion, and not as the assertion of a fact (*Wilkinson* v. *Clauson*, Sup. Ct. Minn., 12 N. W. Rep'r 147).

It is folly to liken a case in which it appears that a tenant discovers an unpleasant or a deleterious odor from the plumbing to the case of a concealment by a landlord of the fact that an infectious disease is lurking in a house. If I let a house in a fever and ague district, without disclosing the existence of malaria in that region, will any man say that the tenant, who made no inquiries of me, may occupy it till I dispossess him, and then defeat my claim for rent on the ground that I entrapped him into hiring by a fraudulent concealment?

The answer was fatally defective, and the justice properly directed judgment for the plaintiff. But it is suggested that the justice did not discover the defects in the answer until the motion for a new trial was made before him. He certainly had discovered them at that time, and I think it a gratuitous assumption to assert that at the trial he did not know the answer to be bad. Whatever his reason for directing judgment may have been, his decision was right, and it will not be reversed, even if he did give a wrong reason for it. I have no doubt, however, that the justice did see the very point in controversy.

We are asked to decide that a tenant may abandon the demised premises if, during his term, he finds the plumbing to be in such a condition that it impairs his comfort or injures his health. It is asserted that the house is then untenantable, and, under the Act of 1860, may be abandoned. I deem it unnecessary to add anything to what was said in *Sutphen* v. *Seebass* (*ante*, p. 139) upon that subject.

The act of 1860 first came under consideration in the

case of *Bloomer* v. *Merrill*, decided by Chief Justice DALY
in 1863, and reported in 1 Daly 485. The Chief Justice
said that the act " was evidently intended to relieve tenants
in cases analogous to that of *Weigall* v. *Waters* (6 Term R.
488), where during the term the building was damaged by
a tempest so as to be untenantable, and yet the tenant was
held bound for the rent." The same view of the object of
the act was taken by the Commission of Appeals in *Suydam*
v. *Jackson* (54 N. Y. 450), where Commissioner REYNOLDS
said, " the act was merely intended to relieve tenants from
the payment of rent where the demised premises were de-
stroyed by fire, or by some kindred cause, resulting from
some sudden and unexpected action of the elements." I
quote the language of Commissioner REYNOLDS, because
the learned counsel for the appellant said that that judge
had not expressed the opinion that the act applied only
where some sudden and violent action of the elements had
destroyed or injured the tenement. It will be seen that
there is no discordance between the views of Commissioner
EARL and those of Commissioner REYNOLDS. I have yet
to find the first expression of dissatisfaction on the part of
any court with the decision in *Suydam* v. *Jackson*. It
seems to me to be a most sensible construction of the
statute, and if it were in my power to overrule it, I would
not abate it a jot or tittle. I reiterate the opinion I gave
in *Seebass* ads. *Sutphen*, for I regard it as a mere corollary
to *Suydam* v. *Jackson*.

If the plumbing were in a bad condition at the time of
the demise, the act of 1860 has no application (*Bloomer* v.
*Merrill*, 1 Daly 485).

The appeal is, in my opinion, utterly without merit, and
I would not have spent so much time in disposing of it,
were it not that some of the younger members of the bar
seem to suppose that sewer gas contains unlimited possi-
bilities for speculative litigation.

The judgment should be affirmed, with costs.

LARREMORE, J.—I concur, because the opinion of the

General Term of this court in *Sutphen* v. *Seebass* (May, 1883, *ante,* p. 139) is conclusive in this action.

J. F. DALY, J.—I concur in the opinion of Judge VAN HOESEN.

Judgment affirmed, with costs.