MARGARET E. RYAN, Claimant, v. STATE OF NEW YORK, Defendant.

(Claim No. 28310.)

Court of Claims, March 24, 1948.

*William B. Lawless, Jr.,* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LAMBIASE, J. The State of New York owns, operates and maintains Allegany State Park as part of its park system. It owns and maintains therein a number of cabins, and in its operation of said park, rents them out furnished for short periods of time. Included among said cabins there was on the 28th day of July, 1946, and there had been for some years previous thereto, one known and described as Cabin No. 8 which, at all times in the claim herein mentioned, was located on what is designated as the Kaiser Trail of the so-called Quaker Area of said park.

On or about July 11, 1946, claimant and her husband, Matthew Ryan, rented from the State of New York, for a valuable consideration, the aforementioned Cabin No. 8 for the period commencing noon July 27, 1946, and ending noon, August 3, 1946. Immediately prior to their rental of said cabin, they had been shown three cabins one of which was Cabin No. 8. At that time claimant and her husband went inside Cabin No. 8 for a few moments, but neither at that time nor at any time prior to their moving into said cabin did they go out upon the open porch located and attached to the rear of the cabin and forming a part thereof. In due course and on or about July 27, 1946, at or about 6:30 P.M., claimant, her husband and her children moved into and took possession of said cabin intending to spend their vacation there.

On the morning of July 28, 1946, at about 11:30 A.M. claimant stepped from the interior of the cabin on to the back porch thereof and had taken but a few steps thereon when her left leg went through the planking or board floor thereof and became wedged in the opening in the floor thus made. As the result thereof she sustained certain injuries to her said leg and incurred

certain expenses in connection with the care and treatment thereof, all of which are more particularly discussed and described hereinafter.

Cabin No. 8 had been built without a porch about the year 1930. Some time in 1936 or 1937, the porch, an open one, was built by someone other than the State of New York. Since the building of the porch, the State had made repairs to it and had maintained it and the cabin.

On or about June 5, 1946, one of the State's employees, a ranger employed in the park, reported in writing to the supervising park ranger, his immediate superior, that while inspecting cabins on a routine patrol in the Quaker Area of the park, the worst condition which he had found in connection with them was with reference to porches and railings, and particularly those porches built without roofs. He reported that such porches, and particularly those without roofs, had rotted to the danger point, and suggested and recommended that the first attention of the carpenters should be given to them. Cabin No. 8, the one involved herein, was included among the cabins thus inspected and thus reported upon and was one of a number of cabins which had a porch without a roof. Thereafter and some time during the early part of June the supervising park ranger of Allegany State Park, whose duties included, among other things, that of protecting the health and safety of visitors to the park, personally inspected the back porch of Cabin No. 8, and particularly the floor thereof, and found that the said floor, which was composed of unmatched hard and soft wood, was partly rotted underneath, that is on its under side. He described the planks in the floor as old and " dozey ", the latter term meaning, he explained, that the planks and boards were brittle and about to break at any time. During the course of his inspection, he walked across the 128 square feet of the floor surface of the porch about three times, during which, he testified, that he " put my weight on one foot and sprung a little bit to try the different boards ". He further stated that his " inspection consisted of jumping and walking across the back porch ". As the result of these tests he then notified the executive secretary of the park of the said condition sending in a report stating therein that repairs should be made to the cabins in the Quaker Area, and that he could find none that could be considered safe.

No repairs were made by the State to the back porch of said cabin between the time that notice of said condition was thus

brought to its attention and the time that claimant and her family moved into the cabin. Furthermore, the State of New York, its agents, servants, and employees, gave no warning and made no disclosure of the dangerous condition of the floor or planking of said porch to claimant and her husband at any time up to the happening of the accident.

As the result of the accident hereinbefore described, claimant sustained personal injuries consisting of a large contusion with a hematoma or swelling of the left thigh. There resulted from said injury an area of ecchymosis or black and blue or hemorrhage which extended from the upper part of the thigh to and around and in back of the knee. She developed a condition of the thigh known as phlebitis which her doctor stated to be entirely due to the injury, although he stated that he did not believe that claimant would have any permanent disability therefrom. Claimant's injuries were painful, and she was unable to perform her ordinary household duties as a housewife for a considerable period of time, although she was ambulatory during most of the period of her disability. She was compelled to and did, out of her own funds, pay for the services of a physician and for medicines, and for the performance by her sister of work in her household, which work she ordinarily would have done herself. In addition thereto, she sustained other damages which are more particularly set forth in the claim but which we do not deem necessary to specifically mention herein.

Claimant sues herein for the recovery of the damages sustained as hereinbefore mentioned which she claims arose out of the negligence of the State of New York in operating and maintaining for hire the aforesaid cabin, and particularly in knowingly permitting the floor of said cabin to remain in a dangerous condition which condition she maintains caused her to fall and to suffer the injuries hereinbefore mentioned and in her claim detailed. The State, while not denying the existence of the defects claimed by the claimant, maintains on its part that the claimant rented the cabin without warranties and without representation on its part; that such defects as are alleged by claimant were obvious and were capable of being observed upon inspection; and that claimant should have observed them and could have discovered them in the course of the exercise of reasonable care.

The liability of the State of New York must be predicated herein upon proof of a breach of its common-law duty as a landlord; and in that connection there are decisions holding to

the effect that a landlord is not liable for his negligence in leaving a building in a dangerous condition when it is let. (*Jaffe* v. *Harteau,* 56 N. Y. 398; *Campbell* v. *Holding Co., Inc.,* 251 N. Y. 446.) There is, however, an exception to the foregoing rule in that when there are concealed defects attended with danger to a lessee, known to the lessor, and of such a nature as not to be discovered by the lessee in the exercise of reasonable care, the lessor is bound to reveal them to the lessee in order that the latter may guard against them; and the failure of the lessor so to do constitutes such negligence as lays the foundation for an action against the lessor if injury occurs. (*Cesar* v. *Karutz,* 60 N. Y. 229; *Steefel* v. *Rothschild,* 179 N. Y. 273; *Kilmer* v. *White,* 254 N. Y. 64; *Walkowicz* v. *Whitney's Inc.,* 178 Misc. 331; Restatement, Law of Torts, § 358.) In *Steefel* v. *Rothschild* (*supra,* pp. 277–278) the court said: " Doubtless the general rule is, as stated in *Jaffe* v. *Harteau* (56 N. Y. 398), that ' A lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended.' This doctrine has repeatedly been cited with approval (*Edwards* v. *N. Y. & Harlem R. R. Co.,* 98 N. Y. 245; *Franklin* v. *Brown,* 118 N. Y. 110; *Daly* v. *Wise,* 132 N. Y. 306), but the cases distinctly recognize the qualification that to relieve the landlord from liability there must be an absence of fraud. Thus in the *Edwards* case Judge EARL said: ' If he (the landlord) demised premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which in many cases imposes liability upon him.' In the *Franklin* case Judge VANN said: ' It is not claimed that any deceit was practiced or false representations made by the plaintiff as to the condition of the house in question, or of its fitness for the purpose for which it was let. The defendant thoroughly examined the premises before she signed the lease and she neither ceased to occupy or attempted to rescind until the last quarter of the term. Neither party knew of the existence of the offensive odors when the contract was made. They were not caused by the landlord and did not originate upon his premises, but came from an adjoining tenement.' In the *Daly* case Judge FOLLETT said: ' In case the owner of a dwelling knows that it has secret defects and conditions rendering it unfit for a residence, and fraudulently represents to one who becomes a tenant that the

defects and conditions do not exist, or if he fraudulently conceals their existence from him, the lessee, if he abandons the house for such cause, will not be liable for subsequently accruing rent.' *These cases thus also recognize that concealment of secret defects may constitute fraud and the point has been expressly decided in other cases.* In *Cesar* v. *Karutz* (60 N. Y. 229) the landlord let apartments infected with smallpox of which he had notice but did not notify his tenant, in consequence of which the latter caught the disease. The landlord was held liable. In the opinion delivered by this court in that case, there is no review of the earlier decisions or discussion of the principle on which the liability was placed, Judge RAPALLO confining himself to saying: ' There can be no doubt that if the facts were as alleged by the plaintiff in the complaint, she had a good cause of action.' It was also held that the charge of the trial court, ' that if a landlord lets premises to a tenant and they are infected and he knows it, it is his duty to let the tenant know it,' was correct. So in Massachusetts it was held that an action in deceit would lie by tenant against a landlord for leasing an infected dwelling of the condition of which he had knowledge but the tenant had not. (*Cutter* v. *Hamlen,* 147 Mass. 471.) It was there said by Judge HOLMES: ' It is settled that a landlord may be liable for not disclosing a concealed source of danger, known by him to be such, and not discoverable by the tenant.' ''
(Italics supplied.) (See, also, *Wallace* v. *Lent,* 1 Daly 481; *Coulson* v. *Whiting,* 12 Daly 408; *Ash* v. *Meeks,* 134 App. Div. 154; and *Cowen* v. *Sunderland,* 145 Mass. 363.)

In *Wallace* v. *Lent* (*supra*) the action was brought to recover for two months' rent of certain premises. The defense was that at the time of the hiring of the premises, the plaintiff fraudulently concealed from the defendant the existence of a deleterious stench in the house, proceeding from some unknown cause, and rendering it dangerous to health to remain in the house. It was shown on the trial that this nuisance was well known to the plaintiff's agent who rented the house; and that the previous tenant had complained of it. The court at page 483 said: '' To let the house to the defendant, concealing so material a matter as this, was a fraud. It was something which the defendant could not have anticipated, and of which he had a right to be advised, as it affected the beneficial enjoyment of the premises. The agent knew that the house was not fit for habitation, but the tenant did not, nor could he have discovered the cause which made it so by any ordinary examination of the

premises. No contract is implied that a house is fit for habitation, for the reason that the tenant may examine it, and the landlord may know no more respecting it than it is in the power of the tenant to discover for himself. But where the landlord knows that a cause exists which renders the house unfit for habitation, it is a wrongful act on his part to rent it without notice of its condition.''

The court reversed the lower court which had rendered judgment for the rent of two months during which the defendant had occupied the premises.

In *Coulson* v. *Whiting* (*supra,* p. 411) it is stated that: '' There is such a thing as a neglect to perform the duty of disclosure where such a duty exists, and that is a case of passive concealment.''

And in *Ash* v. *Meeks* (134 App. Div. 154, 156) it is stated that: '' If the lessor knows of a hidden defect his concealment of it is fraudulent; and of course, if he knowingly make actual misrepresentations, he is guilty of fraud.''

We are satisfied that the State herein failed to disclose to the claimant and to her husband a dangerous condition in the porch of said cabin, unknown to them but known to it, involving unreasonable risk of bodily harm to them, and that the State knew or had reason to believe that the claimant, in the exercise of reasonable care, would not discover the dangerous condition or realize the risk.

We find no negligence on the part of claimant contributing as a proximate cause to the accident herein described. (*Rosine* v. *Richmond County Federal Savings & Loan Assn.,* 294 N. Y. 682.)

We are of the opinion that the acts of the State, its officers, agents, servants, and employees herein constitute negligence on its part which was the sole proximate cause of the accident and of the resulting injuries to claimant, and we do not see that the instant case can be distinguished from the several cases cited herein declaring liability on the part of the defendants therein named under circumstances which we deem to be similar to those involved herein. We hold, therefore, that the State is liable herein.

Furthermore, the established negligence of the State constitutes a wrongful act herein, which, under the cases hereinbefore cited, amounts to a passive concealment with the legal effect of fraud.

We are justified, we feel, under the evidence and upon the record herein in making a finding of passive concealment with

the legal effect of fraud even though the claim does not contain any allegation of fraud or passive concealment in those exact words. (*Gillies* v. *Improvement Co.*, 147 N. Y. 420; *Brady* v. *Nally*, 151 N. Y. 258; *Flandrow* v. *Hammond*, 148 N. Y. 129; *Martin* v. *Home Bank*, 160 N. Y. 190; *Henderson* v. *Henderson*, 247 N. Y. 428, 433.)

Ordinarily claimant's husband would be entitled to recover expenses reasonably incurred for her care and cure in consequence of the injuries sustained by her and for the employment of domestic help which he was obliged to procure because of his wife's disability. No such action has been brought by him. However, the claim alleges and the evidence establishes that claimant incurred a personal liability for such items of damage, and that she paid the same out of her own personal estate. Under such circumstances, therefore, she herself is entitled to recover for the same.

We have accordingly in an accompanying decision made an award to claimant in such an amount as we feel adequately compensates her for her personal injuries sustained, for pain and suffering, for the expenses of her medical care and attention, and for the other items of damage specifically set forth in her claim.